## POPE ET AL. v. ATLANTIC COAST LINE RAILROAD CO.

No. 322.   Argued January 16, 1953.—Decided April 27, 1953.

*Richard M. Maxwell* argued the cause for petitioners. With him on the brief was *Thomas J. Lewis*.

*Allan C. Garden* and *Charles Cook Howell* argued the cause for respondent. With them on the brief was *Douglas W. Matthews*.

MR. CHIEF JUSTICE VINSON delivered the opinion of the Court.

Invoking the Federal Employers' Liability Act,[1] petitioner sued his employer, an interstate railroad company, for injuries sustained during the course of his employment, allegedly through respondent's negligence. The injury occurred in Ben Hill County, Georgia, which was the place of petitioner's employment as well as the place of his residence. But petitioner filed his complaint in the Circuit Court of Jefferson County, Alabama; jurisdiction and venue were grounded on § 6 of the Act.[2]

---

[1] 45 U. S. C. § 51.

[2] 45 U. S. C. § 56.

Respondent then initiated a suit in equity in the Superior Court of Ben Hill County and asked that petitioner be restrained from prosecuting his action in Alabama. Respondent's petition to the Ben Hill County Court contained allegations that petitioner had deliberately sought to "harass" his employer by subjecting it to the burden and expense of defending the claim in a distant forum, far from the scene of the accident and the residences of the witnesses.

The trial court sustained a general demurrer to this petition. The Georgia Supreme Court reversed—holding that Georgia law provided Georgia courts with the power to enjoin Georgia residents from bringing vexatious suits in foreign jurisdictions. Petitioner's claim that § 6 of the Federal Employers' Liability Act prohibited such an injunction in this case was overruled. 209 Ga. 187, 71 S. E. 2d 243. We granted certiorari, 344 U. S. 863, for the decision had interpreted an important federal statute, and the interpretation was asserted to be in conflict with decisions of this Court in *Miles* v. *Illinois Central R. Co.*, 315 U. S. 698 (1942), and *Baltimore & O. R. Co.* v. *Kepner*, 314 U. S. 44 (1941).

In our grant of certiorari, we also directed counsel to brief and argue the question of whether the judgment of the Georgia Supreme Court was "final." The statute which vests us with jurisdiction to review the decisions of state courts provides that the judgment must come from the "highest court of a State in which a decision could be had," and it must be "final." 28 U. S. C. § 1257. The case at bar clearly met the first requirement, but we were in doubt as to whether it satisfied the second.

Congress has limited our power to review judgments from state courts lest the Court's jurisdiction be exercised in piecemeal proceedings to render advisory opinions. Were our reviewing power not limited to "final" judgments, litigants would be free to come here and seek

a decision on federal questions which, after later proceedings, might subsequently prove to be unnecessary and irrelevant to a complete disposition of the litigation.[3] Ordinarily, then, the overruling of a demurrer, like the issuance of a temporary injunction,[4] is not a "final" judgment.

Yet we are not bound to determine the presence or absence of finality from a mere examination of the "face of the judgment."[5] We have not interpreted § 1257 so as to preclude review of federal questions which are in fact ripe for adjudication when tested against the policy of § 1257.[6]

The finality problem arises in this case because the judgment of the Georgia Supreme Court did not, on its face, end the litigation. Both parties agree that Georgia procedure would permit petitioner to return to the Superior Court of Ben Hill County and interpose some other defense to respondent's suit for an injunction. But petitioner has no other defense to interpose. He has been both explicit and free with his concession that his case rests upon his federal claim and nothing more. If the court below decided that claim correctly, then nothing remains to be done but the mechanical entry of judgment by the trial court. Thus, as the case comes to us, the federal question is the controlling question; "there is nothing more to be decided."[7] Under these particular circumstances, we have jurisdiction over the cause, *Richfield Oil Corp.* v. *State Board,* 329 U. S. 69 (1946); and

---

[3] See *Radio Station WOW* v. *Johnson,* 326 U. S. 120, 123–124 (1945); *Gospel Army* v. *Los Angeles,* 331 U. S. 543 (1947). Cf. *Herb* v. *Pitcairn,* 324 U. S. 117, 125–126 (1945).

[4] Cf. *Montgomery Building & Construction Trades Council* v. *Ledbetter Co.,* 344 U. S. 178 (1952).

[5] See *Gospel Army* v. *Los Angeles, supra,* 331 U. S., at 546.

[6] See *Radio Station WOW* v. *Johnson, supra.*

[7] *Clark* v. *Williard,* 292 U. S. 112, 118 (1934).

we reach the merits of petitioner's contention that the Georgia Supreme Court has failed to give proper effect to the venue provisions of the Federal Employers' Liability Act.

Section 6 of that Act establishes petitioner's right to sue in Alabama. It provides that the employee may bring his suit wherever the carrier "shall be doing business," and admittedly respondent does business in Jefferson County, Alabama. Congress has deliberately chosen to give petitioner a transitory cause of action; and we have held before, in a case indistinguishable from this one, that § 6 displaces the traditional "power of a state court to enjoin its citizens, on the ground of oppressiveness . . . from suing . . . in the state courts of another state . . . ." *Miles* v. *Illinois Central R. Co.,* *supra,* 315 U. S., at 699. Respondent admits that the *Miles* case dealt with precisely the issue before us, but respondent tells us that *Miles* is now no longer the law because Congress overruled it, by implication, with the passage of § 1404 (a) of the Judicial Code in 1948.[8] Section 1404 (a) provides:

> "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

We have heretofore held that § 1404 (a) makes the doctrine of *forum non conveniens* applicable to Federal Employers' Liability Act cases brought in federal courts and provides for the transfer of such actions to a more convenient forum. *Ex parte Collett,* 337 U. S. 55 (1949). Respondent would have us extend that decision, to hold that § 1404 (a) also provides for the power asserted by the Georgia court in this case. We do not agree; we do

---

[8] 28 U. S. C. § 1404 (a).

not think the language of the statute suggests any such implied grant of broad power to the state courts.

Section 1404 (a), by its very terms, speaks to federal courts; it addresses itself only to that federal forum in which a lawsuit has been initiated; its function is to vest such a federal forum with the power to transfer a transitory cause of action to a more convenient federal court. It does not speak to state courts, and it says nothing concerning the power of some court other than the forum where a lawsuit is initiated to enjoin the litigant from further prosecuting a transitory cause of action in some other jurisdiction. Nor does § 1404 (a) contemplate the collateral attack on venue now urged by respondent; it contains no suggestion that the venue question may be raised and settled by the initiation of a second lawsuit in a court in a foreign jurisdiction; its limited purpose is to authorize, under certain circumstances, the transfer of a civil action from one federal forum to another federal forum in which the action "might have been brought."

Although the statutory language of § 1404 (a) contains no authorization for the power asserted in this case, respondent directs our attention to remarks in the Reviser's Note to that provision of the Code. The Reviser's Notes were before Congress when it considered enactment of the various provisions of the 1948 Judicial Code and Congress relied upon them to explain the significance and scope of each section.[9]

Basing its argument upon the text of the Reviser's Note to § 1404 (a), respondent argues that it must have been the intent of Congress, if not its expressed purpose, that § 1404 (a) be construed as respondent would construe it.

---

[9] *Ex parte Collett, supra,* 337 U. S., at 65–70.

The Reviser's Note to § 1404 (a) recites that this Court's decision in *Baltimore & Ohio R. Co. v. Kepner, supra,* furnished "an example of the need" for enactment of § 1404 (a).   In the *Kepner* case, we held that a state court was not free to exercise its equity jurisdiction to enjoin a resident of the state from prosecuting a Federal Employers' Liability Act suit in a distant federal court. We reasoned that Congress had purposely given the employee a right to establish venue in the federal court where he had sued, and, what Congress had so expressly given, the courts should not take away.

The reference to the *Kepner* case in the Reviser's Note in nowise conflicts with what we think is the plain meaning of the language of § 1404 (a) itself.   The *Kepner* case was simply cited as an apt example of an inequitable situation which could be cured by providing the federal courts with the power to transfer an action on grounds of *forum non conveniens.*   The full text of the Reviser's Note [10] makes it clear that it was the power of the federal court to transfer, and not the power of the state court to enjoin, which was the remedy envisioned for any injustice wrought by § 6 in the *Kepner* case.

Thus, with the exception of the transfer powers conferred upon the federal courts by § 1404 (a), Congress deliberately chose to leave this Court's decision in the

---

[10] The pertinent part of the Reviser's Note reads:

"Subsection (a) was drafted in accordance with the doctrine of forum non conveniens, permitting transfer to a more convenient forum, even though the venue is proper.   As an example of the need of such a provision, see Baltimore & Ohio R. Co. v. Kepner, 1941, 62 S. Ct. 6, 314 U. S. 44, 86 L. Ed. 28, which was prosecuted under the Federal Employer's Liability Act in New York, although the accident occurred and the employee resided in Ohio.   The new subsection requires the court to determine that the transfer is necessary for convenience of the parties and witnesses, and further, that it is in the interest of justice to do so."

*Kepner* case intact. Indeed, we have said as much before:

> "Section 6 of the Liability Act defines the proper forum; § 1404 (a) of the Code deals with the right to transfer an action properly brought. The two sections deal with two separate and distinct problems. Section 1404 (a) does not limit or otherwise modify any right granted in § 6 of the Liability Act or elsewhere to bring suit in a particular district. . . ." *Ex parte Collett, supra,* 337 U. S., at 60.

Congress might have gone further; it might have vested state courts with the power asserted here. In fact, the same Congress which enacted § 1404 (a) refused to enact a bill which would have amended § 6 of the Federal Employers' Liability Act by limiting the employee's choice of venue to the place of his injury or to the place of his residence.

This proposed amendment—the Jennings Bill [11]—focused Congress' attention on the decisions of this Court in both the *Miles* and the *Kepner* cases. The broad question—involving many policy considerations—of whether venue should be more narrowly restricted, was reopened; cogent arguments—both pro and con—were restated. Proponents of the amendment asserted that, as a result of the *Miles* and *Kepner* decisions, injured employees were left free to abuse their venue rights under § 6 and "harass" their employers in distant forums without restriction. They insisted that these abuses be curtailed.[12]

---

[11] H. R. 1639, 80th Cong., 1st Sess.

[12] See H. R. Rep. No. 613, 80th Cong., 1st Sess. (1947); Hearings before Subcommittee No. 4 of the House Committee on the Judiciary on H. R. 1639, 80th Cong., 1st Sess. (1947); Hearings before a Subcommittee of the Senate Committee on the Judiciary on S. 1567 and H. R. 1639, 80th Cong., 2d Sess. (1948). The Jennings Bill was debated extensively on the floor of the House. See 93 Cong. Rec. 9178–9193.

These arguments prevailed in the House, which passed the Jennings Bill,[13] but the proposed amendment died in the Senate Judiciary Committee, and § 6 of the Federal Employers' Liability Act was left just as this Court had construed it.[14]

Since the narrow question in this case is simply whether the *Miles* case is still controlling; since we find no legislation which has devitalized it in any way, and since we find affirmative evidence that Congress chose to let it stand, the judgment below must be

*Reversed.*

MR. JUSTICE BLACK agrees that the Georgia Supreme Court's judgment was "final" and concurs in reversing that judgment for the reasons given in this Court's opinion.

MR. JUSTICE REED, concurring. I am of the opinion that the Georgia judgment is not final. Compare *Clark* v. *Williard*, 292 U. S. 112. As this view does not prevail, I join in the rest of the opinion and the judgment of the Court.

MR. JUSTICE FRANKFURTER, dissenting.

Pope brought an action under the Federal Employers' Liability Act against the Atlantic Coast Line Railroad, a Virginia corporation, in the Circuit Court of Jefferson County, Alabama. The action derived from an injury sustained by Pope while employed in the railroad's shops at Fitzgerald, Georgia. Fitzgerald is a town in Ben Hill County, of which Pope is, and for many years has been, a resident. Before the Alabama action came to trial, the railroad filed this suit in the Superior Court of Ben Hill County to enjoin Pope from

---

[13] 93 Cong. Rec. 9194.

[14] See *Ex parte Collett, supra*, 337 U. S., at 62–65.

proceeding with his action. In addition to averring the facts just recited, the railroad made allegations relating to the availability of witnesses for both parties and other factors relevant to a determination of the fairness of pursuing the litigation in Alabama. A general demurrer to this attempt to enjoin Pope from seeking to enforce his claim in Alabama was sustained by the Superior Court. The Supreme Court of Georgia, acting under the equitable doctrine of Georgia law which permits restraining a person within the State's jurisdiction "from doing an inequitable thing," reversed. 209 Ga. 187, 71 S. E. 2d 243. "The inequitable thing" which the court deemed it proper to restrain here was the accomplishment of "the employee's purpose . . . to obtain an inequitable and unconscionable advantage over the employer" by bringing his action in Alabama. 209 Ga., at 196, 71 S. E. 2d, at 249.

Had Pope's action against the railroad in Alabama not been based on the Federal Employers' Liability Act, or had it been a negligence action by a passenger, a Georgia court could, no doubt, under the circumstances alleged in this suit, have enjoined Pope or the passenger from proceeding. Do the decisions in *Baltimore & O. R. Co.* v. *Kepner,* 314 U. S. 44, and *Miles* v. *Illinois Central R. Co.,* 315 U. S. 698, in light of their basis and of the congressional response to them in § 1404 (a) of Title 28 of the United States Code, as revised in 1948, restrict the exercise of such general equity powers by Georgia?

I accept the *Kepner* and *Miles* decisions in the sense that I would not overrule them had Congress left them undisturbed. But Congress has cut the ground from under them.

The Court found in those two cases that Congress, by § 6 of the Federal Employers' Liability Act, had given plaintiffs unrestrainable freedom in the choice of a forum among the courts—State and federal—which were au-

thorized to entertain actions under the Act. Following the decisions in *Kepner* and *Miles,* Congress enacted § 1404 (a), permitting the transfer of "any civil action" from one federal district court to another. The rationale of *Kepner* and *Miles* foreclosed, so we had indicated, the possibility of such a transfer in Federal Employers' Liability cases. See *Gulf Oil Corp.* v. *Gilbert,* 330 U. S. 501, 505. In *Ex parte Collett,* 337 U. S. 55, we held that § 1404 (a) had removed the barrier of the *Kepner* and *Miles* decisions and made the doctrine of *forum non conveniens* applicable to cases arising in the federal courts under the Federal Employers' Liability Act as well as to the generality of cases. Congress, we said, naturally enough, had not repealed § 6, which *Kepner* and *Miles* construed, but had removed the "judicial gloss" represented by the Court's opinions in those two cases. 337 U. S., at 61.

The Court now reaffirms this "gloss" by treating it as an iron restriction not to be touched beyond the literal scope of its congressional rejection. In the *Collett* opinion the Court examined in detail the legislative materials pertaining to § 1404 (a). It gave no intimation that Congress did any less than to remove the entire gloss of *Kepner* and *Miles,* thereby freeing us from the compulsions these two cases found in § 6. Congress plainly indicated that the compulsions were the Court's artifact, not the purpose of Congress. The *Collett* case rests to no small extent on the illumination cast on § 1404 (a) by the Reviser's Notes in their explicit reference to *Kepner* as "an example of the need of . . . a provision" "permitting transfer to a more convenient forum." H. R. Rep. No. 308, 80th Cong., 1st Sess., App. 132. *Kepner* was of course not a case of transfer from one federal forum to another. It seems strange to derive from the Reviser's reference an intention to remedy a situation not presented by the facts of the *Kepner* case, and yet to leave

untouched a result very much like that of *Kepner,* which, indeed, as was found in *Miles,* was a necessary consequence of *Kepner.*

Such treatment of legislation seems to me the opposite of obedience to a statutory command. It is beside the point to urge that § 1404 (a) speaks only of *forum non conveniens* in the federal courts and not of State court injunctions against out-of-State suits. If § 1404 (a) is to be given a strictly literal scope, what is to be made of the Reviser's citation of the *Kepner* case, which is an inapt reference on the score of literalness, but quite apt if we consider the "need" that Congress was meeting?

Legislation was read in this hostile spirit in the mid-Victorian days when it was regarded, in the main, as wilful and arbitrary interference with the harmony of the common law and with its rational unfolding by judges. This is an attitude that treats words as ends and not as vehicles to convey meaning. One had supposed that this niggardly view of the function of legislation had long since become outmoded. Statutes, even as decisions, are not to be deemed self-enclosed instances; they are to be regarded as starting points of reasoning, as means for securing coherence and for effectuating purpose. See Landis, Statutes and the Sources of Law, Harvard Legal Essays 213–246.

Section 1404 (a) expresses a policy with respect to the enforcement of the Federal Employers' Liability Act; a policy, as the Reviser's Notes were astute to indicate, contrary to that represented by *Kepner,* and its offspring, *Miles.*[1] It is more than difficult to assume that Congress aimed at the result which this Court reached in the *Col-*

---

[1] No suggestion of a policy inconsistent with that expressed by § 1404 (a), as illumined by the Reviser's Note concerning it, can be derived from the failure of Congress to enact the Jennings Bill, H. R. 1639, 80th Cong., 1st Sess. That bill proposed to amend "the Fed-

*lett* case, and at the same time desired the result of *Miles* and of *Kepner* to continue to be law. Not to reject such an assumption is to attribute to Congress a disregard of the desirability of uniformity in the administration of the Federal Employers' Liability Act; more than that, it is to attribute to Congress a wish to create what may fairly be called, as we shall see, capricious and whimsical results.

The problem of avoiding abuse of the judicial process is not one that arises only in actions under the Federal Employers' Liability Act in the federal courts. Indeed,

---

eral Employers' Liability Act by removing from section 6 (45 U. S. C. 56) the provision permitting actions to be brought in a district court of the United States, in the district of the residence of the defendant, or in which the cause of action arose, or in which the defendant shall be doing business at the time of commencing such action." The bill proposed as well to amend "the Judicial Code by adding a new paragraph to section 51 (28 U. S. C. 112) to provide the venue in any action brought against interstate common carriers by railroad for damages resulting from wrongful death or personal injuries." H. R. Rep. No. 613, 80th Cong., 1st Sess., at p. 2. In both actions under the Federal Employers' Liability Act and the other specified actions against railroads, the Jennings Bill would have permitted suit only in the district or county in which the plaintiff resided or the accident occurred. No doubt the abuses which are curable by discretionary dismissals under the doctrine of *forum non conveniens* or, as in this case, by means of an injunction, could be cured also in the manner of the Jennings Bill. But the difference between the two methods of attack is quite plain. The Jennings Bill represented a meat-ax approach and was opposed on precisely that ground by the minority in the House Committee on the Judiciary. The minority pointed out that the evil of "trafficking in, and solicitation of, lawsuits" originated with our *Kepner* and *Miles* decisions. The minority's aim was to have lawsuits "moved around for the convenience of witnesses and for other purposes in accordance with the provisions of the State laws" rather than be governed by the inflexible venue provisions of the Jennings Bill. *Id.*, at Part 2, pp. 3–4. If a congressional policy can be derived from rejection of the Jennings Bill, it is a policy which coincides with that expressed in the Reviser's Note to § 1404 (a), the policy, that is, which the Court disregards.

most of the actions under that Act are brought in the State courts. There is no rhyme or reason in assuming that Congress was eager to shut off abuses in the federal courts but forbade their prevention by State courts.[2] Congress dealt specifically with the abuses in the federal courts since, in Title 28, it was addressing itself to federal courts. But the central fact is that Congress was formulating a policy. To disregard the natural implications of a statute and to imprison our reading of it in the shell of the mere words is to commit the cardinal sin in statutory construction, blind literalness.

The doctrine enunciated by *Kepner* and *Miles* at least made for uniformity in the operation of § 6, in that those cases treated the grant of authority to State and federal courts to entertain Federal Employers' Liability actions as the grant of an unqualified right to plaintiffs, indefeasible regardless of the interests of justice affected in its exercise.[3] Now, under § 1404 (a), federal courts may freely apply, and do apply, the doctrine of *forum non conveniens* to Federal Employers' Liability cases. *Ex parte Collett, supra.* So may State courts. *Southern R. Co. v. Mayfield,* 340 U. S. 1. Alabama is one of a minority of the States which has ruled that it will not recognize the doctrine of *forum non conveniens.* See

[2] To suggest that Congress, if it saw fit, could "vest" in State courts the power which this Court now denies them is, of course, to misconceive our problem. The issue is not what Congress might grant to State judiciaries but whether it has deprived them of a power which inheres in them.

[3] To be sure, *Douglas* v. *New York, N. H. & H. R. Co.,* 279 U. S. 377, was not overruled, and a State court was presumably free to try to dismiss an action under the Federal Employers' Liability Act on the ground that it was brought in a *forum non conveniens.* This, however, was not a very likely occurrence in view of the language of the *Kepner* and *Miles* opinions, and so the plaintiff's choice of a forum was almost always certain to be respected in both federal and State courts.

Barrett, The Doctrine of *Forum non Conveniens,* 35
Calif. L. Rev. 380, at 388, n. 40. Only if he brings his
action in a court of one of these States can a plain-
tiff be sure, under today's decision, that no matter how
unjustifiable his choice, the forum in which the action is
brought will be the forum in which it is tried. The sole
effect of our adherence to *Kepner–Miles* now is the crea-
tion of a haven in which the choice of a harassing forum,
an activity which Congress has condemned in § 1404 (a)
and which therefore we no longer ought to regard as
legitimate, may be carried on by virtue of our "judicial
gloss," although it would not be tolerated in other courts
in the United States, including those over which we have
supervising authority.

Is it reasonable to suggest that Congress contemplated
this situation? Is it fair to infer that Congress removed
the "judicial gloss" only to the extent that the strictest
reading of its words indicates, no matter how mutilated
this left the policy which Congress, as the Reviser's Notes
show, clearly avowed?

If the suit now before us had been brought in a federal
court outside Georgia, or in any one of a number of other
State courts, it would in all probability have been tried in
Georgia, since under the doctrine of *forum non conveniens*
the criteria which determined the exercise by Georgia of
its equity powers would have been equally decisive. This
result, that is, trial in Georgia on defendant's motion in
the circumstances here present, does not run counter to
the policy of the Federal Employers' Liability Act; we
decreed its equivalent in *Collett.* Nor is it that the de-
vice employed by Georgia to prevent trial in Alabama
is objectionable, for it is a familiar remedy of equity em-
ployed in the interests of justice. We have sanctioned its
use in other appropriate instances, see *Cole* v. *Cunning-
ham,* 133 U. S. 107, and should not deny its use to Georgia

in effectuating an end whose desirability is no longer open to question.

By nothing that I have said do I mean to imply that every application by a State court of the doctrine of *forum non conveniens* in an action under the Federal Employers' Liability Act, or every cognate injunction, is necessarily proper, and that none may run afoul of that Act. By no technical or local procedural device can a State defeat the effective enjoyment of a federal right. See *American Railway Express Co.* v. *Levee,* 263 U. S. 19; *Davis* v. *Wechsler,* 263 U. S. 22. But on the admitted facts now before us there can be no doubt that the choice of Alabama as a forum was purely vexatious. On this record there is not the least shred of relevant connection between this litigation and Alabama.