372 S.E.2d 786

**John E. GARDNER, et al.**

v.

**NORFOLK AND WESTERN RAILWAY COMPANY, A Foreign Corporation.**

**No. CC977.**

Supreme Court of Appeals of West Virginia.

July 7, 1988.

Dissenting Opinion July 13, 1988.

Rehearing Denied Sept. 22, 1988.

Jeremy C. McCamic, Charleston, Paul L. Pratt, East Alton, Ill., for Gardner et al.

John C. Palmer, IV, Charleston, Cathy M. Armstrong, Wheeling, for Norfolk and Western Ry. Co.

McHUGH, Chief Justice:

This case is before this Court upon certi-fied questions from the Circuit Court of

Brooke County, West Virginia ("the trial court").[1] We have reviewed the petition, the trial court's rulings on the certified questions and the briefs and oral argument of counsel. We affirm in part, reverse in part and remand for further proceedings.

## I

The plaintiffs below are 103 employees of the defendant railroad, Norfolk and Western Railway Company ("N & W"), a foreign corporation qualified to do business in this State. N & W is incorporated under the laws of the Commonwealth of Virginia and its principal office is located in Roanoke, Virginia. Its chief officer and other officers reside in Virginia. N & W is a wholly owned subsidiary of Norfolk Southern Corporation, also a Virginia corporation. N & W owns 184 acres of land in Brooke County, West Virginia, over which it operates one of its main east-west lines, with the daily passage of its trains. N & W thus admits that it does business in Brooke County, West Virginia, one of the northern counties of this State. It also has facilities in some of the southern counties of this State and in other states.

Sixty of the plaintiffs are nonresidents of West Virginia. Forty-three of the plaintiffs are residents of West Virginia. The resident plaintiffs reside in southern counties of this State, namely, Mercer, McDo-

well, Mingo, Logan and Wayne Counties. All of the plaintiffs have sustained either traumatic injuries, such as orthopedic injuries, or moderate to severe occupational hearing loss. These injuries allegedly occurred while the plaintiffs were performing their duties as employees of N & W.[2] With respect to the claims involving hearing loss, both the resident and nonresident plaintiffs have been exposed throughout their employment with N & W to high level noise pollution from various track machinery, apparently inside and outside West Virginia, although the situs of these injuries is not presently known. The plaintiffs do not allege that they have been exposed to noise pollution in Brooke County, West Virginia. With respect to the claims involving traumatic injuries, nearly all of such injuries occurred outside West Virginia. At least one of the nonresident plaintiffs sustained a traumatic injury in McDowell County, West Virginia, one of the southern counties of this State. None of the traumatic injuries were sustained in Brooke County, West Virginia.

None of the fact witnesses or expert witnesses reside in Brooke County, West Virginia. Some of the expert witnesses reside in other counties of West Virginia, for example, Ohio and Kanawha Counties. N & W has a rule of employment which requires coemployees, who would be fact

---

1. See W.Va.R.App.P. 13; W.Va.Code, 58–5–2 [1967]. The latter, in relevant part, provides for certification of "[a]ny question arising upon … the venue of the circuit court, … [or] upon the jurisdiction of the circuit court of a person[.]" Although both subject matter and personal jurisdiction with respect to the defendant railroad as well as venue under the statute are admitted, this case raises questions regarding (1) the power of a circuit court in this type of case to decline to exercise jurisdiction over a defendant and (2) the power of a circuit court in this type of case to transfer venue.

A circuit court's ruling on the first of these questions, raised by a motion to dismiss the action, is certifiable when such motion is denied but is appealable when such motion is granted. Here, the trial court denied the motion to dismiss the actions with respect to the resident plaintiffs but granted such motion with respect to the nonresident plaintiffs. Accordingly, the latter ruling is not technically certifiable, but appealable. The defendant has not, however,

raised this point. This Court will therefore deem the matter pertaining to the nonresident plaintiffs to have been appealed and to have been consolidated with the certified questions pertaining to the resident plaintiffs. Cf. Shay v. Rinehart & Dennis Co., 116 W.Va. 24, 178 S.E. 272 (1935) (order granting motion, under W.Va. Code, 56–9–1, as amended, for removal of civil proceedings to another circuit court, is not a final, appealable order but involves mere change of forum without dismissal of action).

2. The various plaintiffs were employed by N & W either as "railway carmen," constructing, repairing or inspecting railroad cars, or as "maintenance-of-way" employees, constructing, maintaining or repairing tracks, right-of-ways, crossings, yards, bridges and other structures. The plaintiffs were employed throughout the "eastern region" of N & W, consisting of the states of Virginia, West Virginia, Kentucky and Ohio.

witnesses, to attend court at the direction and expense of N & W.[3]

The plaintiffs brought their actions in the Circuit Court of Brooke County, West Virginia, under the provisions of the Federal Employers' Liability Act ("the FELA"), specifically, 45 *U.S.C.* § 56 (1982), which provides that a FELA case may be brought, among other places, in a federal or state court in any federal district in which the defendant is doing business.[4]

The defendant moved to dismiss the actions on the ground of *forum non conveniens.* The trial court, requiring a "reasonable relationship" to be shown so as to maintain the actions in Brooke County, denied the motion to dismiss the actions with respect to those cases in which the plaintiffs were residents of West Virginia but

**3.** In addition to West Virginia counsel, the plaintiffs are represented by an Illinois law firm. In addition to West Virginia counsel, the defendant is represented by a Pennsylvania law firm.

The trial court indicated that these 103 cases had increased its caseload by about thirty-three percent. Most cases brought under the Federal Employers' Liability Act are, however, settled before they go to trial. *State ex rel. Burlington N.R.R. v. District Court,* 229 Mont. 325, 328, 746 P.2d 1077, 1080 (1987).

**4.** 45 *U.S.C.* § 56 (1982) provides in pertinent part:

Under this chapter an action may be brought in a district court of the United States, in the district of the residence of the defendant, or in which the cause of action arose, or in which the defendant shall be doing business at the time of commencing such action. The jurisdiction of the courts of the United States under this chapter shall be concurrent with that of the courts of the several States.

**5.** The relevant provisions of *W.Va.Code,* 56–9–1 [1939] state:

A circuit court ... wherein an action, suit, motion or other civil proceeding is pending, or the judge thereof in vacation, may on the motion of any party, after ten days' notice to the adverse party or his attorney, and for good cause shown, order such action, suit, motion or other civil proceeding to be removed ... to any other circuit court, ...: Provided, that the judge of such other circuit court in a case of removal from one circuit to another may decline to hear said cause, if, in his opinion, the demands and requirements of his office render it improper or inconvenient for him to do so.

granted the motion to dismiss the actions with respect to those cases in which the plaintiffs were not residents of West Virginia at the time the actions were filed. The trial court, without stating its reasons on the record, subsequently denied the defendant's motion, under *W.Va.Code,* 56–9–1 [1939], to transfer the actions of the West Virginia residents to the circuit courts of the counties in which those plaintiffs resided.[5]

Finally, the trial court, upon motion of the parties, certified questions to this Court concerning (1) the applicability to FELA cases of the common-law principle of dismissing a case because of the selection of a *forum non conveniens* (an inconvenient forum) and (2) the propriety in FELA cases of transferring venue intrastate under a state statute.[6]

**6.** The trial court submitted to this Court the following certified questions:

1. Whether West Virginia recognizes, or should adopt, the doctrines of 'forum non conveniens'?

A. Whether a Circuit Court, in reference to 'forum non conveniens,' may decline to hear a civil action where the plaintiff is not a resident of this State, where the situs of the accident or occurrence is not in this State, and where the defendant is not incorporated in this State and has its principal place of business in another State?

B. If this State recognizes the doctrine of 'forum non conveniens,' whether it should be applied to Federal Employers' Liability Actions (F.E.L.A.) where the plaintiff's 'substantial right' to choose his forum is governed by federal statute?

C. Whether a Circuit Court should decline to hear actions where the place of plaintiff's residence and of the accident or occurrence is not in this State, but where the plaintiff's chosen forum in West Virginia complies with [the] State statute and where the plaintiff's employment requires him to work in interstate railroad commerce?

2. Whether a Circuit Court, in reference to 'forum non conveniens,' should accept to hear a civil action where the plaintiff is a resident of this State, but not of the forum County, where the situs of the accident or occurrence is not in this State, and [where] the defendant, while doing business in this State, is not incorporated here and has its principal place of business in another State?

If a Circuit Court accepts such a civil action as set forth above, whether the Court, pursuant to West Virginia Code § 56–9–1, may transfer the circuit action to the County of plaintiff's residence or where the defendant

We agree with the trial court that the FELA actions of the West Virginia residents should not have been dismissed and that their actions should not have been transferred to the circuit courts of the counties in which those plaintiffs resided at the time the actions were brought. We disagree with the trial court's ruling that the FELA actions of the nonresident plaintiffs should have been dismissed. In short, all of the actions should be heard by the Circuit Court of Brooke County, West Virginia.

## II

### A.

■ Originally, the venue of an action under the Federal Employers' Liability Act ("the FELA"), 45 *U.S.C.* §§ 51–60 (1982), was limited by a general federal venue statute to the federal district(s) in which the defendant was an "inhabitant." *Baltimore & O.R.R. v. Kepner*, 314 U.S. 44, 49, 62 S.Ct. 6, 8, 86 L.Ed. 28, 31 (1941). Since 1910, a special federal venue statute for FELA actions, now codified as 45 *U.S.C.* § 56 (1982), *see supra* note 4, provides for venue in a federal or state court in the federal district(s) in which (1) the defendant resides, or (2) does business or (3) the cause of action arose. Thus, a FELA action is without question transitory. The language of the special federal venue statute for FELA actions was deliberately chosen to enable the plaintiff to bring a FELA action against the defendant at *any* place in *any* state where the defendant is actually carrying on business, if the plaintiff chooses to file his action there. *Id.* at 50, 62 S.Ct. at 8, 86 L.Ed. at 31–32.

In 1947, Congress *rejected* a proposed amendment to the FELA venue statute which would have limited venue to the federal district(s) in which the plaintiff resided or in which the cause of action arose; under this rejected amendment, only if process could not be served in either of the above places could an action be brought where the defendant was doing business.

The Supreme Court of the United States has stated: "The right to select the forum granted in [45 *U.S.C.* § 56] is a substantial right." *Boyd v. Grand Trunk W.R.R.*, 338 U.S. 263, 266, 70 S.Ct. 26, 28, 94 L.Ed. 55, 58 (1949).[7]

does the major portion of its work in this State?

For the reasons stated herein it is not necessary to answer each of these questions in order to decide this case. "In a certified case this Court will not consider certified questions not necessary to a decision of the case." Syl. pt. 6, *West Virginia Water Service Co. v. Cunningham*, 143 W.Va. 1, 98 S.E.2d 891 (1957). *See also City of Fairmont v. Retail, Wholesale, & Department Store Union*, 166 W.Va. 1, 3–4, 283 S.E.2d 589, 590–91 (1980): "[U]pon receiving certified questions we retain some flexibility in determining how and to what extent they will be answered."

7. There is a line of cases decided by the Supreme Court of the United States involving the FELA venue statute but not directly involving the concept of *forum non conveniens*. In *Baltimore & O.R.R. v. Kepner*, 314 U.S. 44, 62 S.Ct. 6, 86 L.Ed. 28 (1941), it was held that a state court in the state of the plaintiff's residence may not enjoin, as vexatious, a FELA action brought by the plaintiff in another state in a federal court having jurisdiction over the defendant and venue. Similarly, in *Miles v. Illinois Cent. R.R.*, 315 U.S. 698, 62 S.Ct. 827, 86 L.Ed. 1129 (1942), it was held that a state court in the state of the plaintiff's residence may not enjoin, as vexatious, a FELA action brought by the plaintiff in another state in a state court having jurisdiction over the defendant and venue.

In 1948, Congress enacted legislation, now codified as 28 *U.S.C.* § 1404(a) (1982). It provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The legislative history of this statute indicates that it permits a transfer of a case from one federal court to another federal court upon a lesser showing of inconvenience than is necessary for a dismissal of a case under the common-law principle of *forum non conveniens*. *Norwood v. Kirkpatrick*, 349 U.S. 29, 75 S.Ct. 544, 99 L.Ed. 789 (1955).

This statute was held to be applicable to FELA actions in *Ex parte Collett*, 337 U.S. 55, 69 S.Ct. 944, 93 L.Ed. 1207 (1949), and in *Kilpatrick v. Texas & P. Ry.*, 337 U.S. 75, 69 S.Ct. 953, 93 L.Ed. 1223 (1949). In so holding, the Supreme Court of the United States distinguished between the venue provisions of 45 *U.S.C.* § 56, which deal with the places where FELA actions may be brought initially, and the transfer provisions of 28 *U.S.C.* § 1404(a), which deal with the right to transfer an action properly brought.

Finally, the Supreme Court of the United States, in *Pope v. Atlantic Coast Line R.R.*, 345 U.S. 379, 73 S.Ct. 749, 97 L.Ed. 1094 (1953), expressly reaffirmed *Miles* and held that a state

In *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947), the leading case on *forum non conveniens*, but *not* involving a FELA action, the court made this remark:

> It is true that in cases under the Federal Employers' Liability Act we have held that plaintiff's choice of a forum cannot be defeated on the basis of *forum non conveniens*. But this was because the special venue act under which those cases are brought was believed to require it.

330 U.S. at 505, 67 S.Ct. at 841, 91 L.Ed. at 1061, *citing Kepner* and *Miles, see supra* note 7, which actually involved collateral attacks on venue by seeking injunctions from other courts. Moreover, transfers of FELA actions may now be made in federal courts under 28 *U.S.C.* § 1404(a), enacted in 1948, after *Gilbert.*

In contrast to this *dictum* in *Gilbert* are the holdings in two FELA cases, namely, *Douglas v. New York, N.H. & H.R.R.*, 279 U.S. 377, 49 S.Ct. 355, 73 L.Ed. 747 (1929), and *Missouri ex rel. Southern Ry. v. May-*

*field*, 340 U.S. 1, 71 S.Ct. 1, 95 L.Ed. 3 (1950). In *Douglas*, Mr. Justice Holmes, writing for the court, held that the FELA "does not purport to require State Courts to entertain suits arising under it, but only to empower them to do so, so far as the authority of the United States is concerned." 279 U.S. at 387, 49 S.Ct. at 356, 73 L.Ed. at 752. "[T]here is nothing in the Act of Congress that purports to force a duty upon such [state] Courts [to entertain FELA actions] as against an otherwise valid excuse [, such as a state statute construed to allow a court to dismiss, under the principle of *forum non conveniens*, any foreign cause of action against a foreign corporation brought by any nonresident or by another foreign corporation]." *Id.* at 388, 49 S.Ct. at 356, 73 L.Ed. at 752.

The *Douglas* court also held that a state, with respect to access to its courts, may, without offending the privileges-and-immunities clause, distinguish between residents and nonresidents, as long as nonresident citizens of the state and nonresident noncitizens are treated the same.[8] "A distinction

court in the state of the plaintiff's residence may not enjoin, as vexatious, a FELA action brought by the plaintiff in another state in a state court having jurisdiction over the defendant and venue. The court ruled that the enactment of 28 *U.S.C.* § 1404(a), after *Miles*, had no effect on *Miles* because 28 *U.S.C.* § 1404(a) applies only to federal, not state, courts and deals only with transfer of actions by the forum court, not with injunctive powers of another court.

*Pope* was decided after *Mayfield*, discussed *infra* in the body of this opinion, but *Pope* apparently did not undermine *Mayfield*. *Pope*, unlike *Mayfield*, did not involve the power of a forum court to decline to exercise jurisdiction, in a FELA case, under the principle of *forum non conveniens.*

8. The privileges-and-immunities clause is set forth in the *U.S. Const.* art IV, § 2, cl. 1: "The Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States." This clause by its terms relates to protecting persons in their capacity as citizens of other states. In comparison, *U.S. Const.* amend. XIV, § 1 by its terms relates to protecting persons in their capacity as citizens of this nation: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States[.]"

Due to our disposition of this case in favor of the nonresident, as well as West Virginia resident, plaintiffs on the ground that *forum non conveniens* and *W.Va.Code*, 56–9–1 [1939] do

not apply to FELA actions brought in the courts of this State, this Court need not determine whether the trial court's ruling, in favor of the West Virginia resident plaintiffs and adverse to the nonresident plaintiffs, is violative of the privileges-and-immunities clause. The trial court did not explain on the record why the actions of the West Virginia resident plaintiffs, none of whom resided in the forum county, Brooke County, West Virginia, had a "reasonable relationship" with Brooke County, while the actions of the plaintiffs residing outside West Virginia did not have such a relationship. The ruling may be impermissibly discriminatory against nonresidents of this State.

*Douglas* and *Mayfield* allow a state to prefer its residents in access to the courts of the state. We need not decide in the present case if *Douglas* and *Mayfield* have been affected by recent opinions of the Supreme Court of the United States on the privileges-and-immunities clause, such as *Supreme Court of New Hampshire v. Piper*, 470 U.S. 274, 105 S.Ct. 1272, 84 L.Ed.2d 205 (1985), involving residency requirements for the practice of law. *Piper* holds that the privileges-and-immunities clause "does not preclude discrimination against nonresidents [of the state] where (i) there is a substantial reason for the difference in treatment; and (ii) the discrimination practiced against nonresidents bears a substantial relationship to the State's objective." *Id.* at 284, 105 S.Ct. at 1278, 84 L.Ed.2d at 213. *See also Sargus v. West Virginia*

of privileges according to residence [as opposed to citizenship] may be based upon rational considerations.... There are manifest reasons for preferring residents in access to often overcrowded Courts, both in convenience and in the fact that broadly speaking it is they who pay for maintaining the Courts concerned." *Id.* at 387, 49 S.Ct. at 356, 73 L.Ed. at 752.

In *Mayfield,* Mr. Justice Frankfurter, writing for the court, held that "neither of these cases [*Kepner* and *Miles, see supra* note 7] limited the power of a State to deny access to *its* courts to persons seeking recovery under the Federal Employers' Liability Act if in similar cases the State for reasons of local policy denies resort to its courts and enforces its policy impartially[.]" 340 U.S. at 4, 71 S.Ct. at 3, 95 L.Ed. at 8 (emphasis added). By "impartial" enforcement of a state policy with respect to *forum non conveniens,* the court meant enforcement "so as not to involve a discrimination against Employers' Liability Act suits and not to offend against the Privileges-and-Immunities Clause of the Constitution." *Id.*

Mr. Justice Jackson, providing the decisive vote in the five-to-four *Mayfield* decision, stated in his concurring opinion: "Certainly a State is under no *obligation* to provide a court for two nonresident parties to litigate a foreign-born cause of action when the Federal Government, which creates the cause of action, frees its own courts within that State from mandatory consideration of the same case." *Id.* at 6, 71 S.Ct. at 3-4, 95 L.Ed. at 9 (emphasis added).

Relying upon *Douglas,* the *Mayfield* court held that the states were not precluded from applying the principle of *forum non conveniens* to FELA actions merely because the FELA empowers state courts to entertain suits arising under it. Instead, "[a]ccording to its own notions of *procedural* policy, a State may reject, as it may accept, the doctrine [of *forum non conveniens* ] for all causes of action begun in its

*Board of Law Examiners,* 170 W.Va. 453, 294 S.E.2d 440 (1982) (residency requirements for admission to bar examination violates privi-

courts." *Id.* at 3, 71 S.Ct. at 2, 95 L.Ed. at 7 (emphasis added).

### B.

West Virginia is one of only ten states which has not expressly adopted the common-law principle of *forum non conveniens. See Chambers v. Merrell-Dow Pharmaceuticals, Inc.,* 35 Ohio St.3d 123, 126 n. 3, 519 N.E.2d 370, 372 n. 3 (1988). *See also* Comment, *Procedure—Intrastate Application of Forum Non Conveniens,* 70 W.Va.L.Rev. 249 (1967-68). The common-law principle of *forum non conveniens* is simply that a court may, in its sound discretion, decline to exercise jurisdiction, to promote the convenience of witnesses and the ends of justice, even when jurisdiction and venue are authorized by the letter of a statute. *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 507, 67 S.Ct. 839, 842, 91 L.Ed. 1055, 1062 (1947). *See also Black's Law Dictionary* 589 (5th ed. 1979). The common-law principle of *forum non conveniens* is applicable only if, as a threshold matter, the forum court has jurisdiction and venue is proper under the statute. *Gilbert,* 330 U.S. at 504, 67 S.Ct. at 841, 91 L.Ed. at 1060. "In all cases in which the doctrine of *forum non conveniens* comes into play, it presupposes at least two forums in which the defendant is amenable to process; the doctrine furnishes criteria for choice between them." *Id.* at 506-07, 67 S.Ct. at 842, 91 L.Ed. at 1061.

According to *Gilbert,* the criteria to be considered in deciding whether to dismiss a case under the common-law principle of *forum non conveniens* fall into two general categories, specifically, the private interests of the litigants and the interests of the public. Included among the private interests of the litigants are: the relative ease of access to sources of proof; the availability of compulsory process for the attendance of unwilling witnesses and the cost of obtaining the attendance of willing witnesses; the possibility of a view of property, if such a view would be appropriate in the

leges-and-immunities clause; insufficient justification offered for discrimination).

action; the enforcibility of any judgment; and all other practical problems that make a trial of a case easy, expeditious and inexpensive.

The public interests include the relative congestion of the respective courts' dockets; the burden of imposing jury duty upon the citizens of a community which has no or very little relation to the litigation; the local interest in having localized controversies decided at home; and the advantages of conducting a trial in a forum familiar with the applicable law and of avoiding conflicts of law. *Gilbert*, 330 U.S. at 508–09, 67 S.Ct. at 843, 91 L.Ed. at 1062–63.

Unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed. *Id.* at 508, 67 S.Ct. at 843, 91 L.Ed. at 1062. On the other hand, a nonresident plaintiff's choice of forum deserves less deference than that of a resident plaintiff. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255–56, 102 S.Ct. 252, 266, 70 L.Ed.2d 419, 435–36 (1981). "[T]he ultimate inquiry is where trial will best serve the convenience of the parties and the ends of justice." *Koster v. (American) Lumbermens Mutual Casualty Co.*, 330 U.S. 518, 527, 67 S.Ct. 828, 833, 91 L.Ed. 1067, 1076 (1947).

■ If the forum court has determined that the alternate forum is more convenient and that the ends of justice will be promoted by trial in the alternate forum, the common-law principle of *forum non conveniens* requires the forum court to dismiss the case, not merely transfer or "remove" it to another court. The dismissal normally will be conditioned upon, *inter alia*, the defendant's agreement to waive the defense of the running of the statute of limitations. *Chambers v. Merrell–Dow Pharmaceuticals, Inc.*, 35 Ohio St.3d 123, 127, 519 N.E.2d 370, 374 (1988), and cases cited there.

■ In the State of West Virginia a circuit court may, upon motion and for "good cause" shown, order a civil proceeding to be "removed" to another circuit court. *W.Va.Code*, 56–9–1 [1939], *see supra* note 5. This Court has not been confronted with a case requiring a decision on whether the "good cause" of *W.Va.Code*, 56–9–1 [1939] is coextensive with, more restrictive than or broader than, the common-law principle of *forum non conveniens*, and, for the reasons stated *infra*, we need not decide that question here.[9] It is clear, however, that *W.Va.Code*, 56–9–1 [1939] authorizes a circuit court to "remove" or transfer, not dismiss, a civil proceeding, and that such statute is "a viable counterpart to" the federal statute on transfer of venue, 28 *U.S.C.* § 1404(a) (1982), *see supra* note 7. *Hinkle v. Black*, 164 W.Va. 112, 124 n. 13, 262 S.E.2d 744, 751 n. 13 (1979).[10]

### C.

Another consideration relevant to the question of whether this Court should recognize the common-law principle of *forum non conveniens* is the "access-to-courts" or "open courts" provision of our State

9. This Court, in discussing *W.Va.Code*, 56–9–1 [1939], recently referred generally to the "probable disadvantage or inconvenience" to the defendants of the case being tried in the forum selected by the plaintiffs. *State ex rel. Kenamond v. Warmuth*, 179 W.Va. 230, 234, 366 S.E.2d 738, 742 (1988). The definition of "good cause" within the meaning of this statute was not, however, an issue before the Court in that case.

10. *W.Va.Code*, 56–1–1, the general venue statute in this State, was amended in 1986 to, *inter alia*, add subsection (b):

(b) Whenever a civil action or proceeding is brought in the county wherein the cause of action arose, under the provisions of subsection (a) of this section, if no defendant resides in such county, a defendant to the action or proceeding may move the court before which the action is pending for a change of venue to a county wherein one or more of the defendants resides, and upon a showing by the moving defendant that the county to which the proposed change of venue would be made would better afford convenience to the parties litigant and the witnesses likely to be called, and if the ends of justice would be better served by such change of venue, the court may grant such motion.

This statute is not applicable to the present case because venue here was not based upon where the cause of action arose but upon where the defendant was doing business.

We also note that *W.Va.R.Civ.P.* 42(b) authorizes a circuit court in certain circumstances to order actions transferred *to it*. This procedural rule is obviously not involved in this case.

*Constitution:* "The courts of this State shall be open, and every person, for an injury done to him, in his person, property or reputation, shall have remedy by due course of law; and justice shall be administered without sale, denial or delay." *W.Va. Const.* art. III, § 17. Other courts have held that their "access-to-courts" or "open courts" constitutional provisions are not an absolute bar to the adoption of the common-law principle of *forum non conveniens. See, e.g., Chambers v. Merrell–Dow Pharmaceuticals, Inc.,* 35 Ohio St.3d 123, 132, 519 N.E.2d 370, 378 (1988): "The right of 'every person' to bring an action in an Ohio court is not an unlimited, absolute guarantee that every cognizable claim filed in a court of general jurisdiction will be litigated to a final conclusion in such court." Instead, "[l]itigants may find their claims barred ... by any number of ... devices consonant with .:. 'due course of law.' " *Id.*

### D.

█ Based upon the foregoing discussion, we recognize that federal law does not require this Court to reject or accept the common-law principle of *forum non conveniens* in FELA actions. We also recognize that our "access-to-courts" or "open courts" constitutional provision, *W.Va. Const.* art. III, § 17, is not an absolute bar to our adoption of the common-law principle of *forum non conveniens.* Nonetheless, this Court holds that the common-law principle of *forum non conveniens* and the similar state statute on removal of civil proceedings, *W.Va.Code,* 56–9–1 [1939], are not applicable to actions brought in the courts of this State under the Federal Employers' Liability Act, 45 *U.S.C.* §§ 51–60, as amended, in light of the strong policy favoring the plaintiffs' choice of forum in such cases and in light of the strong policy of *W.Va. Const.* art. III, § 17 providing access to the courts of

this State. This identical approach has been taken elsewhere. *Labella v. Burlington Northern, Inc.,* 182 Mont. 202, 595 P.2d 1184 (1979), *followed in Bevacqua v. Burlington Northern, Inc.,* 183 Mont. 237, 598 P.2d 1124 (1979), and *State ex rel. Burlington N.R.R. v. District Court,* 229 Mont. 325, 746 P.2d 1077 (1987). *See generally* annotation, *Power of State or State Court to Decline Jurisdiction of Action Under Federal Employers' Liability Act,* 43 A.L.R.2d 774 (1955 and Later Case Service); *cf.* annotation, *Forum Non Conveniens: Circumstances Justifying State Court's Refusal to Take Jurisdiction of Federal Employers' Liability Act Proceeding,* 60 A.L.R.3d 964 (1974) (collecting cases assuming the power to invoke the principle of *forum non conveniens* in FELA actions and analyzing the circumstances justifying, or not justifying, dismissals of FELA actions under such principle).

Our decision is a narrow one. Our holding herein does not deny or recognize the applicability of the common-law principle of *forum non conveniens* to cases not brought under the Federal Employers' Liability Act.[11]

For the foregoing reasons this case is remanded to the Circuit Court of Brooke County, West Virginia, for further proceedings in all of the FELA actions brought therein by the resident and nonresident plaintiffs.

Certified questions answered; case remanded for further proceedings.

NEELY, Justice, dissenting in part:

The majority opinion is so thoroughly researched and so well written that a long dissent is unnecessary. As the majority correctly concedes, the decision in this case is based entirely upon a policy decision by this Court that non-taxpayer, out-of-state railway workers shall be able to use the

---

**11.** The *Mayfield* case, discussed in subsection II.A of this opinion, held that a state may accept or reject the principle of *forum non conveniens* according to the state's notions of *procedural* policy. *W.Va. Const.* art. VIII, § 3 empowers this Court to "promulgate rules ... relating to ... practice and procedure[.]" *W.Va.Code,* 51–

1–4 [1935] provides for a certain procedure, including an opportunity for certain persons to request a hearing, in order for rules governing pleading, practice and procedure to become effective. The current vitality of this portion of this statute is a question which need not be addressed here.

fora of this State to litigate FELA cases when they find a defendant doing business here.

First I would point out the obvious: this is a context specific decision. This case does not preclude circuit courts in other cases from applying the doctrine of *forum non conveniens*. Furthermore, there was no well developed factual record before us concerning the effect of large numbers of foreign FELA cases on the docket of the Brooke County Circuit Court. Given that the majority in this case is narrow, I believe it entirely appropriate to raise the issue again even with respect to FELA cases, when a good factual record concerning the implications of mass tort litigation on the local docket can be presented. I dissent because I believe that opening the courts of this state to mass tort litigation by foreign plaintiffs who have no contacts here is eminently ill-advised.

### I

Under *W. Va. Const.* art. VI, § 51 relating to the State budget, which says, "[p]rovided, that no item relating to the judiciary shall be decreased ..." West Virginia has the best funded state court system in the United States. Although the salary of judges and their numbers are set by the legislature, the number of supporting personnel and the level of logistical support for the courts are entirely within the discretion of the West Virginia Supreme Court of Appeals. Unlike many other states that have clogged dockets because of deliberate political decisions to undermine the courts because they are engines for the redistribution of wealth, this State is blessed with adequate judicial machinery for our current needs. In most circuits jury trials can be had almost immediately if the parties are ready.

Although the average West Virginia court user will find legitimate grounds to complain about our system, in comparison to other systems, our system works reasonably well. But it is the residents of this State who have paid for our system and it is now out-of-state, non-taxpaying plaintiffs who seek to use it. Much as I would like

to bring the blessings of West Virginia's judicial system to all mankind, a court system is little different from a Kroger store: if a Kroger store gives away meat and vegetables to people who can't pay, there will soon be no meat and vegetables for the paying customers.

Throughout a free economy the price system is usually the mechanism chosen to regulate the allocation of scarce goods and services. When a good or service is in high demand but short supply, the price goes up and users with the least urgent need or the least money drop out of the market. Price-system rationing, however, presents a significant equity problem: those with the most money get the most goods and services. Consequently, when necessities of life are in short supply, like food during World War II or medicine during an epidemic, there is broad social resistance to allowing price-system rationing. Certainly we have even greater reservations about the equity of price-system rationing in the civil justice system.

Because there is no price-system rationing in the civil justice system, courts are like a traditional common in an English agricultural village where everyone has the right to graze livestock on the pasturage held in common. Any rational farmer will graze all his sheep or cattle on the common, notwithstanding that if everyone does the same thing the common will degenerate, and everyone's livestock will suffer from malnutrition. Any time a good or service is provided free of charge, it is in everyone's interest to get as much as he can because he cannot expect his own forebearance to be followed by everyone else's. That is why in such circumstances explicit regulation is required, like the fish and game laws that every state now enforces to ensure that wildlife will not be hunted to extinction. It is also the rationale for the doctrine of *forum non conveniens* in state courts.

Every time demand for a good or service exceeds supply, some rationing system, either price or non-price, will go into effect. In the case of the unregulated and thus overused common, the quality of the pas-

ture degenerates to such an extent that the weaker livestock die and leave enough for those who are strong enough to survive. It is merely luck whether a farmer has a strong or weak cow; if farmers keep replenishing the livestock that die so that more of them continue to die, then the farmers who are the last to run out of money to buy livestock ultimately get the benefit of the whole common. That is not a very intelligent system of rationing but it is *a* system of rationing nonetheless.

In the communist world, particularly Russia, rationing is accomplished by the political authorities. The "bidding up of prices" is not done in the monetary currency but rather in the political currency. Those with influence and official positions can shop in special stores that have stocks of desirable goods. Regular stores charge the same price as the special stores, but the regular stores never have any goods to sell.

When neither the price-system nor the political system is allowed to ration, however, then goods and services will be rationed by other natural mechanisms. The most common of these mechanisms in the United States is standing in line. We apply this rationing system to tickets to rock concerts, tickets to the West Virginia–Penn State game, and to our courts.

Litigants can take as much of the goods and services of the courts as they want when their turn comes up. In most places, of course, their turn doesn't come up very often because of the length of the queue. That's why the plaintiffs before us are coming here. Unfortunately, the people who can afford to stand in line the longest are not necessarily the people who have the most urgent need to litigate, yet our egalitarian tradition prohibits the sale of one's place in line to someone with a more pressing need for court services.

What concerns me, then, about the case before us is that the litigation of out-of-state FELA cases may well cause delay for local residents with urgent domestic prob-

lems, important contract matters (delay in the decision of which may lead to local bankruptcies) and serious personal injuries where the litigants may be destitute until some court awards them a judgment. In addition, it should be remembered that Brooke County has a population of only 31,117 people, which means that if a great deal of out-of-state tort litigation is conducted there, calls to jury duty may become unduly burdensome. It is one thing to say that jury duty is an obligation of citizenship with regard to deciding the disputes within one's community; it is quite another to impose this involuntary servitude for the benefit of total strangers, the courts of whose states would not return the favor.

## II

Finally, I would point out that Judge Robert Merhige of the United States District Court for the Eastern District of Virginia and Judge Thomas D. Lambros of the United States District Court for the Eastern District of Ohio have devised superb mechanisms for handling mass tort litigation that place the additional costs of such litigation squarely upon the shoulders of the litigants.[1]

It seems perfectly reasonable to me that if we are to offer our fora to out-of-state litigants, the least that they can do is underwrite some of the extra costs associated with their litigation that would otherwise be borne by our taxpayers. Such mechanisms as privately paid special masters, privately paid advisory juries to assist in determining damages for court supervised settlements, and other litigant-financed contributions to the courts' logistical support all seem to me entirely appropriate.

I am authorized to say that Justice BROTHERTON joins with me in this dissent.

1. Judge Lambros, at my request, has been kind enough to forward to us all of the form orders, discovery procedures, special master appointment orders, and other material necessary to set up machinery similar to that now used in mass tort cases in the U.S. district courts. This material is available to our judges and lawyers through the West Virginia Supreme Court of Appeals library.