# FILED

May 31 2016

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

DA 14-0825

IN THE SUPREME COURT OF THE STATE OF MONTANA

2016 MT 126

KELLI TYRRELL, as Special Administrator
for the Estate of BRENT T. TYRRELL (deceased),

        Plaintiff and Appellee,

  v.

BNSF RAILWAY CO., a Delaware corporation,

        Defendant and Appellant.

------------------------------------------------------------

ROBERT M. NELSON,

        Plaintiff and Appellant,

  v.

BNSF RAILWAY CO.,
a Delaware corporation,

        Defendant and Appellee.

| | |
|---|---|
| APPEAL FROM: | District Court of the Thirteenth Judicial District, In and For the County of Yellowstone, Cause Nos. DV 14-0699 and DV 11-417 |
| | Honorable Michael G. Moses and G. Todd Baugh, Presiding Judges |

COUNSEL OF RECORD:

    For Appellant BNSF Railway Co.:

        Jeff Hedger, Michelle T. Friend, Jesse Myers, Hedger Friend P.L.L.C., Billings, Montana

        Randy J. Cox (argued), Scott M. Stearns, Boone Karlberg P.C., Missoula, Montana

        Chad M. Knight, Cash K. Parker, Hall & Evans, LLC, Denver, Colorado

        Anthony M. Nicastro, Jaclyn S. Laferriere, Hall & Evans, LLC, Billings, Montana

For Appellant Robert M. Nelson:

Bob Fain, Attorney at Law, Billings, Montana

For Appellee Kelly Tyrrell:

Fredric A. Bremseth, Christopher Moreland (argued), Bremseth Law Firm, P.C., Minnetonka, Minnesota

For Amicus Montana Chamber of Commerce:

J. Daniel Hoven, Browning, Kaleczyc, Berry & Hoven, P.C., Helena, Montana

Argued and Submitted: December 9, 2015

Decided: May 31, 2016

Filed:

_____
Clerk

Justice James Jeremiah Shea delivered the Opinion of the Court.

¶1 The plaintiffs in these consolidated appeals, Robert Nelson and Kelli Tyrrell (Tyrrell), as Special Administrator of the Estate of Brent Tyrrell (Brent), pled violations of the Federal Employers' Liability Act (FELA), 45 U.S.C. §§ 51 through 60, for injuries allegedly sustained while Nelson and Brent were employed by BNSF Railway Company in states other than Montana. Both actions were brought in the Thirteenth Judicial District Court, Yellowstone County. BNSF moved to dismiss both plaintiffs' claims for lack of personal jurisdiction. Judge Michael G. Moses, presiding over Tyrrell's action, denied BNSF's motion to dismiss. Judge G. Todd Baugh, presiding over Nelson's action, granted BNSF's motion to dismiss. BNSF appeals Judge Moses' order, and Nelson appeals Judge Baugh's order. The issues on appeal are:

1. *Whether Montana courts have personal jurisdiction over BNSF under the FELA.*

2. *Whether Montana courts have personal jurisdiction over BNSF under Montana law.*

¶2 We hold that Montana courts have general personal jurisdiction over BNSF under the FELA and Montana law. We affirm Judge Moses' order denying BNSF's motion to dismiss Tyrrell's complaint. We reverse Judge Baugh's order granting BNSF's motion to dismiss Nelson's complaint. We remand both cases for further proceedings consistent with this Opinion.

**PROCEDURAL AND FACTUAL BACKGROUND**

¶3 In March 2011, Nelson, a North Dakota resident, sued BNSF to recover damages for knee injuries he allegedly sustained while employed by BNSF as a fuel truck driver.

3

BNSF is a Delaware corporation, and its principal place of business is Texas. Nelson's complaint did not allege that Nelson ever worked in Montana or was injured in Montana.

¶4 BNSF filed a M. R. Civ. P. 12(b)(2) motion to dismiss Nelson's complaint for lack of personal jurisdiction. Judge Baugh granted BNSF's motion, stating: "I believe 3 Judges in this District have faced similar Motions which they have denied based on applicable precedent. Their rulings seem sound but do not look at whether based on common sense it may be time to reassess FELA cases in Montana which have no forum related connection." Judge Baugh then relied upon a recent United States Supreme Court decision, *Daimler AG v. Bauman*, ___ U.S. ___, 134 S. Ct. 746 (2014) (discussed in our resolution of Issue 1), to hold that BNSF's "due process rights prevent this Court from exercising general all-purpose jurisdiction over [BNSF] and this Court does not have specific jurisdiction." Nelson appeals Judge Baugh's order granting BNSF's motion to dismiss.

¶5 In May 2014, Tyrrell sued BNSF for injuries Brent allegedly sustained during the course of his employment with BNSF. The complaint alleged that, while working for BNSF, Brent was exposed to various carcinogenic chemicals that caused him to develop kidney cancer and ultimately led to his death. The complaint did not allege that Brent ever worked for BNSF in Montana or that any of the alleged chemical exposures occurred in Montana.

¶6 BNSF filed a M. R. Civ. P. 12(b)(2) motion to dismiss Tyrrell's complaint for lack of personal jurisdiction. Judge Moses denied BNSF's motion. He adopted and incorporated Montana Thirteenth Judicial District Court, Yellowstone County Judge

4

Gregory R. Todd's ruling on BNSF's M. R. Civ. P. 12(b)(2) motion to dismiss in *Jesse R. Monroy v. BNSF Ry. Co.*, Cause No. DV 13-799 (Aug. 1, 2014). In *Monroy*, Judge Todd found:

> BNSF has established 40 new facilities in Montana since 2010 and invested $470 million dollars in Montana in the last four years. . . . In 2010, Montana shipped by BNSF 35.2 million tons of coal, 8.5 million tons of grain and 2.9 million tons of petroleum. . . . In the last year approximately 57,000 BNSF rail cars of grain per year rode the rails in Montana and 230,000 BNSF rail cars of coal per year go out of Montana. In October 2013, BNSF opened an economic development office in Billings, Montana, because of the heightened amount of business not only for coal and grain in Montana, but in particular the Bakken oil development.[1]

Judge Todd analyzed Montana and United States Supreme Court precedent interpreting the FELA. He concluded that, under Montana's long-arm statute, M. R. Civ. P. 4(b)(1), BNSF "does meet the criteria of being found within Montana and having substantial, continuous and systematic activities within Montana for general jurisdiction purposes." BNSF appeals Judge Moses' order denying BNSF's motion to dismiss, which adopted and incorporated Judge Todd's analysis in *Monroy*.

**STANDARD OF REVIEW**

¶7 "The existence of personal jurisdiction is a question of law, which we review de novo." *Tackett v. Duncan*, 2014 MT 253, ¶ 16, 376 Mont. 348, 334 P.3d 920.

---

[1] BNSF has not disputed any of these facts.

**DISCUSSION**

¶8     *1. Whether Montana courts have personal jurisdiction over BNSF under the FELA.*

¶9     Congress enacted the FELA in 1908. The Act was "an avowed departure from the rules of common law," in response to "the special needs of railroad workers who are daily exposed to the risks inherent in railroad work and are helpless to provide adequately for their own safety." *Sinkler v. Mo. Pac. R.R. Co.*, 356 U.S. 326, 329, 78 S. Ct. 758, 762 (1958). In keeping with Congressional intent, "[t]he United States Supreme Court has repeatedly noted that the FELA is to be given a liberal construction in favor of injured railroad employees so that it may accomplish humanitarian and remedial purposes." *Labella v. Burlington N.*, 182 Mont. 202, 205, 595 P.2d 1184, 1186 (1979) (citing *Urie v. Thompson*, 337 U.S. 163, 69 S. Ct. 1018 (1949); *Coray v. S. Pac. Co.*, 335 U.S. 520, 69 S. Ct. 275 (1949); *McGovern v. Phila. & Reading R.R.*, 235 U.S. 389, 35 S. Ct. 127 (1914)).

¶10     When the FELA was initially enacted, "venue of actions under it was left to the general venue statute, 35 Stat. 65, which fixed the venue of suits in the United States courts, based in whole or in part upon the [FELA], in districts of which the defendant was an inhabitant." *Balt. & Ohio. R.R. Co. v. Kepner*, 314 U.S. 44, 49, 62 S. Ct. 6, 8 (1941) (citation omitted). However, "[l]itigation promptly disclosed what Congress considered deficiencies in such a limitation of the right of railroad employees to bring personal injury actions." *Kepner*, 314 U.S. at 49, 62 S. Ct. at 8 (citations omitted). Thus, in 1910, Congress added the following language to Section 6 of the FELA, 45 U.S.C. § 56:

6

> Under this chapter an action may be brought in a district court of the United States, in the district of the residence of the defendant, or in which the cause of action arose, or in which the defendant shall be doing business at the time of commencing such action. The jurisdiction of the courts of the United States under this chapter shall be concurrent with that of the courts of the several States.

*See Kepner*, 314 U.S. at 49, 62 S. Ct. at 8 (citing Act of Apr. 5, 1910, Pub. L. No. 61-117, ch. 143, 36 Stat. 291).

¶11    This language was added to rectify "the injustice to an injured employee of compelling him to go to the possibly far distant place of habitation of the defendant carrier, with consequent increased expense for the transportation and maintenance of witnesses, lawyers and parties, away from their homes." *Kepner*, 314 U.S. at 50, 62 S. Ct. at 8. The amendment was "deliberately chosen to enable the plaintiff, in the words of Senator Borah, who submitted the report on the bill [to amend the FELA], 'to find the corporation at any point or place or State where it is actually carrying on business, and there lodge his action, if he chooses to do so.'" *Kepner*, 314 U.S. at 50, 62 S. Ct. at 8 (quoting 45 Cong. Rec. 4034 (1910) (statement of Sen. William Borah)). In *Miles v. Ill. Cent. R.R. Co.*, 315 U.S. 698, 702, 62 S. Ct. 827, 829 (1942), the U.S. Supreme Court explained:

> The specific declaration in [45 U.S.C. § 56] that the United States courts should have concurrent jurisdiction with those of the several states, and the prohibition against removal, point clearly to the conclusion that Congress has exercised its authority over interstate commerce to the extent of permitting suits in state courts, despite the incidental burden, where process may be obtained on a defendant . . . actually carrying on railroading by operating trains and maintaining traffic offices within the territory of the court's jurisdiction.

7

Justice Jackson, concurring, further noted:

> Unless there is some hidden meaning in the language Congress has employed, the injured workman or his surviving dependents may choose from the entire territory served by the railroad any place in which to sue, and in which to choose either a federal or a state court of which to ask his remedy. There is nothing which requires a plaintiff to whom such a choice is given to exercise it in a self-denying or large-hearted manner. There is nothing to restrain use of that privilege . . . .

*Miles*, 315 U.S. at 706-07, 62 S. Ct. at 832 (Jackson, J., concurring).

¶12 The U.S. Supreme Court consistently has interpreted 45 U.S.C. § 56 to allow state courts to hear cases brought under the FELA even where the only basis for jurisdiction is the railroad doing business in the forum state. *E.g.*, *Pope v. Atl. Coast Line R.R. Co.*, 345 U.S. 379, 73 S. Ct. 749 (1953); *Miles*, 315 U.S. 698, 62 S. Ct. 827. For example, in *Pope*, a plaintiff who resided and was injured in Georgia filed a FELA action against his railroad employer, a Virginia corporation, in Alabama state court. The plaintiff grounded jurisdiction and venue on 45 U.S.C. § 56. The railroad requested an injunction from a Georgia state court pursuant to a Georgia statute providing Georgia courts with the power to enjoin Georgia residents from bringing suits in a foreign jurisdiction. The Georgia Supreme Court ruled in favor of the railroad. The U.S. Supreme Court reversed, holding that 45 U.S.C. § 56 "establishes a petitioner's right to sue in Alabama. It provides that the employee may bring his suit wherever the carrier 'shall be doing business,' and admittedly respondent does business in Jefferson County, Alabama. Congress has deliberately chosen to give petitioner a transitory cause of action . . . ." *Pope*, 345 U.S. at 383, 73 S. Ct. at 751.

¶13 Similarly, in *Miles*, 315 U.S. 698, 62 S. Ct. 827, a Tennessee resident was killed while working for his railroad employer in Tennessee. The railroad was an Illinois corporation. The employee's estate brought suit against the railroad in Missouri. The Tennessee Court of Appeals, at the railroad's request, permanently enjoined the employee's estate from prosecuting his claim in Missouri. The U.S. Supreme Court reversed, holding:

> Congress has exercised its authority over interstate commerce to the extent of permitting suits in state courts, despite the incidental burden, where process may be obtained on a defendant . . . actually carrying on railroading by operating trains and maintaining traffic offices within the territory of the court's jurisdiction.

*Miles*, 315 U.S. at 702, 62 S. Ct. at 829.

¶14 BNSF contends that *Daimler*, ___ U.S. ___, 134 S. Ct. 746, overruled prior U.S. Supreme Court precedent holding the FELA conferred jurisdiction to state courts where the railroad does business. In *Daimler*, Argentinian plaintiffs filed suit in California Federal District Court against DaimlerChrysler Aktiengesellschaft (Daimler), a German public stock company headquartered in Stuttgart that manufactured Mercedes-Benz vehicles in Germany. The complaint alleged that, during Argentina's "Dirty War" from 1976-1983, Daimler's Argentinian subsidiary, Mercedes-Benz Argentina, collaborated with Argentinian security forces to kidnap, detain, torture, and kill Mercedes-Benz Argentina workers. The plaintiffs sought damages for the alleged human rights violations from Daimler under the laws of the United States, California, and Argentina. They predicated jurisdiction over the lawsuit on the California contacts of

9

Mercedes-Benz USA, LLC, an indirect subsidiary of Daimler incorporated in Delaware with its principal place of business in New Jersey.

¶15    The U.S. Supreme Court granted certiorari "to decide whether, consistent with the Due Process Clause of the Fourteenth amendment, Daimler is amenable to suit in California courts for claims involving only foreign plaintiffs and occurring entirely abroad." *Daimler*, ___ U.S. at ___, 134 S. Ct. at 753.  The Court emphasized that "general jurisdiction requires affiliations so 'continuous and systematic' as to render [the foreign corporation] essentially at home in the forum State." *Daimler*, ___ U.S. at ___ n.11, 134 S. Ct. at 758 n.11 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919, 131 S. Ct. 2846, 2851 (2011)) (internal quotation marks omitted and changes in original).  The Court rejected the plaintiffs' "general or all-purpose" theory of jurisdiction, under which Daimler could be sued "on any and all claims against it, wherever in the world the claims may arise." *Daimler*, ___ U.S. at ___, 134 S. Ct. at 751.  The Court determined that such "exorbitant" exercises of personal jurisdiction are "barred by due process constraints on the assertion of adjudicatory authority." *Daimler*, ___ U.S. at ___, 134 S. Ct. at 751.  The Court emphasized that "no part of [Mercedes-Benz] Argentina's alleged collaboration with Argentinian authorities took place in California or anywhere else in the United States" and rejected the plaintiffs' attempt to found jurisdiction over Daimler on the California contacts of Mercedes-Benz USA. *Daimler*, ___ U.S. at ___, 134 S. Ct. at 752, 760.  In doing so, the Court noted that Mercedes-Benz USA's relationship with Daimler was that of an independent contractor,

10

and it had no authority to make binding obligations or act on behalf of Daimler. *Daimler,* ___ U.S. at ___, 134 S. Ct. at 752.

¶16    *Daimler* addressed "the authority of a court in the United States to entertain a claim brought by foreign plaintiffs against a foreign defendant based on events occurring entirely outside the United States." *Daimler,* ___ U.S. at ___, 134 S. Ct. at 750.  Unlike the cases before us, *Daimler* did not involve a FELA claim or a railroad defendant. Likewise, none of the cases BNSF cites to support its position that *Daimler* precludes state court jurisdiction over FELA claims against railroads involved FELA claims or railroad defendants.[2]   In *Daimler*, the U.S. Supreme Court did not address personal jurisdiction under the FELA, nor did it need to: the Court has long held that the FELA does not apply to torts that occur in foreign countries, even when all parties involved are citizens of the United States.  *See N.Y. Cent. R.R. Co. v. Chisholm*, 268 U.S. 29, 31, 45 S. Ct. 402, 402 (1925); *accord Cox v. Chesapeake Ohio R.R. Co.*, 494 F.2d 349, 350 (6th Cir. 1974) (noting that *Chisholm* is "a firm restriction on the extra territorial application" of the FELA and that "the Supreme Court apparently added to this resolve in *Lauritzen v. Larsen*, [345 U.S. 571, 581, 73 S. Ct. 921, 927 (1953)], wherein it stated that, 'we have held [the FELA] not applicable to an American citizen's injury sustained in Canada while in service of an American employer'").

---

[2]  In its opening brief, BNSF cites to *BNSF Ry. Co. v. Superior Court*, 235 Cal. App. 4th 591 (Cal. Ct. App. 2015).  This case was rendered nonciteable pending review by the California Supreme Court in *BNSF Ry. Co. v. Superior Court*, 352 P.3d 417 (Cal. 2015); therefore, it has no persuasive value.

¶17 Moreover, *Daimler* did not present novel law. Rather, the U.S. Supreme Court emphasized prior holdings that general jurisdiction requires foreign corporations to have affiliations so "continuous and systematic" as to render them "at home" in the forum state. *Daimler*, ___ U.S. at ____, 134 S. Ct. at 749 (citing *Goodyear*, 564 U.S. at 919, 131 S. Ct. at 2851). Congress drafted the FELA to make a railroad "at home" for jurisdictional purposes wherever it is "doing business." *See Kepner*, 314 U.S. at 49-50, 62 S. Ct. at 8 (citing 45 Cong. Rec. at 4034). Therefore, *Daimler* did not overrule decades of consistent U.S. Supreme Court precedent dictating that railroad employees may bring suit under the FELA wherever the railroad is "doing business."

¶18 The U.S. Supreme Court's decision in *Denver & Rio Grande W. R.R. Co. v. Terte*, 284 U.S. 284, 52 S. Ct. 152 (1932), provides further guidance on whether BNSF is subject to suit under the FELA by way of "doing business" in Montana. In *Terte*, the U.S. Supreme Court addressed whether a Missouri state court could entertain a FELA suit against two different railroad companies—the Denver and Rio Grande Western Railroad Company (Rio Grande) and the Atchison, Topeka and Santa Fe Railway Company (Santa Fe). The railroad employee sought damages for injuries sustained in Colorado by the railroad companies' joint negligence. The U.S. Supreme Court addressed the personal jurisdiction of the Missouri court over the two railroads, respectively. The Court held that the Rio Grande could not be sued in Missouri, because:

> The Rio Grande, a Delaware corporation, operates lines which lie wholly within Colorado, Utah and New Mexico. It neither owns nor operates any line in Missouri; but it does own and use some property located there. It maintains one or more offices in the State and employs agents who solicit traffic. These agents engage in transactions incident to the procurement,

12

delivery and record of such traffic. It is not licensed to do business in Missouri.

*Terte*, 284 U.S. at 286, 52 S. Ct. at 153. By contrast, the U.S. Supreme Court held that "the Santa Fe was properly sued" in Missouri, relying on the following facts:

> The Santa Fe, a Kansas corporation, owns and operates railroad lines in Missouri, Kansas, Colorado, and other States. It is licensed to do business in Missouri and has an office and agents in Jackson County[, Missouri]. These agents transact the business ordinarily connected with the operation of a carrier by railroad.

*Terte*, 284 U.S. at 286, 52 S. Ct. at 153.

¶19 It is undisputed that BNSF owns and operates railroad lines in Montana. BNSF is licensed to do business and has offices and agents in Montana. BNSF's agents in Montana transact business ordinarily connected with the operation of a railroad carrier. Thus, under the U.S. Supreme Court's reasoning in *Terte*, BNSF is "properly sued" in Montana. *See Terte*, 284 U.S. at 287-88, 52 S. Ct. at 153. BNSF is "doing business" in Montana, and Montana courts have general personal jurisdiction over BNSF under 45 U.S.C. § 56.

¶20 This conclusion is in line with the U.S. Supreme Court's "liberal construction" of the FELA in favor of injured railroad workers. *See Urie*, 337 U.S. at 180, 69 S. Ct. at 1030. 45 U.S.C. § 56 does not specify whether the "concurrent jurisdiction" conferred upon the state and federal courts refers only to subject-matter jurisdiction or personal jurisdiction, the U.S. Supreme Court has never given it such an interpretation, and it is not the province of this Court to insert such a limitation. *See* § 1-2-101, MCA ("In the

13

construction of a statute, the office of the judge is . . . not to insert what has been omitted . . . .").

¶21 Moreover, as BNSF's counsel acknowledged at oral argument, BNSF's interpretation of 45 U.S.C. § 56 would mean that a Montana resident, hired and employed by BNSF in Montana, who was injured while working—even temporarily—for BNSF in another state, would not be able to bring his action in the state in which he regularly resides and where his employer regularly conducts business. Such a result is in direct contravention of the FELA's purpose of protecting injured railroad workers from what the U.S. Supreme Court characterized as the "injustice" of having to travel far from home to bring suit against the railroad. *See Kepner*, 314 U.S. at 49-50, 62 S. Ct. at 8. And if Montana residents may sue BNSF in a Montana state court for injuries that occur outside of Montana, so may residents of other states. *See Miles*, 315 U.S. at 704, 62 S. Ct. at 830 ("To deny citizens from other states, suitors under [the FELA], access to [Missouri's] courts would, if [Missouri] permitted access to its own citizens, violate the Privileges and Immunities Clause.") (citing U.S. Const. art. IV, § 2).

¶22 Relying on a case that is factually and legally distinguishable, BNSF asks us to depart from the language of 45 U.S.C. § 56—and from a century of U.S. Supreme Court precedent interpreting it—to conclude that the FELA no longer provides Montana courts with jurisdiction over cases in which the plaintiff was injured outside of Montana. We decline to do so. BNSF does business in Montana; therefore, under the FELA, Montana courts have general personal jurisdiction over BNSF.

14

¶23 *2. Whether Montana courts have personal jurisdiction over BNSF under Montana law.*

¶24 The FELA does not require states to entertain suits arising under it; rather it empowers them to do so where local law permits. *See Douglas v. N.Y., New Haven & Hartford R.R. Co.*, 279 U.S. 377, 388, 49 S. Ct. 355, 356 (1929) ("[T]here is nothing in the Act of Congress that purports to force a duty upon [State] Courts as against an otherwise valid excuse.") (citation omitted); *Mondou v. N.Y., New Haven & Hartford R.R. Co.* (*Second Employers' Liab. Cases*), 223 U.S. 1, 59, 32 S. Ct. 169, 179 (1912) ("[R]ights arising under [the FELA] may be enforced, as of right, in the courts of the States when their jurisdiction, as prescribed by local laws, is adequate to the occasion."). However, "the Federal Constitution prohibits state courts of general jurisdiction from refusing to [enforce the FELA] solely because the suit is brought under a federal law." *McKnett v. St. Louis & S.F. Ry. Co.*, 292 U.S. 230, 233-34, 54 S. Ct. 690, 692 (1934). *See also Dice v. Akron, Canton & Youngstown R.R. Co.*, 342 U.S. 359, 364-65, 72 S. Ct. 312, 316 ("[N]o State which gives its courts jurisdiction over common law actions for negligence may deny access to its courts for a negligence action founded on the [FELA]."). Further, the existence of jurisdiction "creates an implication of duty to exercise it, and that its exercise may be onerous does not militate against that implication." *Mondou*, 223 U.S. at 58, 32 S. Ct. at 178.

¶25 Montana courts conduct a two-step inquiry to determine whether the exercise of personal jurisdiction over a nonresident defendant is appropriate. *Edsall Constr. Co. v. Robinson*, 246 Mont. 378, 381, 804 P.2d 1039, 1041 (1991). First, we determine whether

jurisdiction exists pursuant to M. R. Civ. P. 4(b)(1). If it does, we next determine "whether the exercise of personal jurisdiction comports with traditional notions of fair play and substantial justice embodied in the due process clause." *Simmons Oil Corp. v. Holly Corp.*, 244 Mont. 75, 83, 796 P.2d 189, 193 (1990).

¶26   Personal jurisdiction can be either general or specific. Specific jurisdiction "focuses on the relationship among the defendant, the forum, and the litigation, . . . and depends on whether the defendant's suit-related conduct created a substantial connection with the forum state." *Tackett*, ¶ 19 (citations and internal quotation marks omitted). Conversely, general jurisdiction exists over "[a]ll persons found within the state of Montana." M. R. Civ. P. 4(b)(1). A nonresident defendant that maintains "substantial" or "continuous and systematic" contacts with Montana is "found within" the state and may be subject to Montana's jurisdiction, even if the cause of action is unrelated to the defendant's activities within Montana. *Tackett*, ¶ 20 (quoting *Simmons Oil Corp.*, 244 Mont. at 83, 796 P.2d at 194).

¶27   BNSF does not dispute that it conducts business in Montana by operating trains and maintaining traffic offices. According to BNSF, it has over 2,000 miles of railroad track and more than 2,000 employees in Montana. BNSF maintains facilities in Montana, owns real estate in Montana, has a telephone listing in Montana, and does direct advertising in Montana with Montana media. Each of these factors is significant in determining whether general jurisdiction over BNSF exists. *See Bedrejo v. Triple E Can., Ltd.*, 1999 MT 200, ¶¶ 8, 12, 295 Mont. 430, 984 P.2d 739. Though BNSF alleges that its revenues from Montana represent less than ten percent of its nationwide business,

that fact alone does not defeat personal jurisdiction. *See Reed v. Am. Airlines*, 197 Mont. 34, 36, 640 P.2d 912, 914 (1982) (holding that a nonresident corporation's activities "must comprise a significant component of the company's business, although the percentage as related to total business may be small" for personal jurisdiction purposes). Judge Baugh, though he granted BNSF's motion to dismiss, recognized that BNSF "has way more than minimum contacts with the State of Montana. It is a significant, substantial, continuous and systematic business enterprise in Montana even though its operations in some of the 27 other states it operates in are far greater." With that aspect of Judge Baugh's opinion, we agree: BNSF maintains substantial, continuous, and systematic contacts with Montana. Thus, BNSF is "found within" the state under M. R. Civ. P. 4(b)(1). *See Tackett*, ¶ 20.

¶28 Given that personal jurisdiction exists pursuant to M. R. Civ. P. 4(b)(1), we next determine whether exercising personal jurisdiction over BNSF comports with the due process clause. *Simmons Oil Corp.*, 244 Mont. at 82-83, 796 P.2d at 193. BNSF's contention that it is not subject to personal jurisdiction in Montana courts is largely based on its incorrect interpretation of *Daimler*, discussed in our resolution of Issue 1. In contrast to BNSF's position, we have held that "[t]he District Courts of Montana clearly have jurisdiction" to hear FELA cases. *Labella*, 182 Mont. at 204, 595 P.2d at 1186. We also have followed federal case law in giving the FELA a liberal construction to accomplish its humanitarian and remedial purposes. *Davis v. Union Pac. R.R.*, 282 Mont. 233, 245, 937 P.2d 27, 34 (1997). This is especially true regarding a plaintiff's forum selection under the FELA, *Davis*, 282 Mont. at 245-46, 937 P.2d at 34,

17

"even if that choice of forum involves forum shopping," *State ex rel. Burlington N. R.R. v. District Court*, 270 Mont. 146, ___, 891 P.2d 493, 499 (1995) (rejecting BNSF's motion to dismiss an out-of-state FELA plaintiff's claim notwithstanding the doctrine of forum non conveniens and § 25-2-201, MCA).

¶29 Our own precedent on this issue is consistently clear and consonant with the U.S. Supreme Court's interpretation of 45 U.S.C. § 56. In *Labella*, 182 Mont. at 207, 595 P.2d at 1187, we explained:

> The policy of the State of Montana is clearly announced in the State Constitution. 'Courts of justice shall be open to every person, and speedy remedy afforded for every injury to person, property, or character.' 1972 Mont. Const., Art. II, § 16. This constitutional right is unrestricted by reference to residence or citizenship. Indeed, such qualification could not pass muster under the Privileges and Immunities Clause of Art. IV, § 2 of the United States Constitution.

If Montana courts have personal jurisdiction over BNSF for FELA cases brought by Montana residents, Montana courts necessarily must have personal jurisdiction over BNSF for FELA cases brought by nonresidents.

¶30 Under Montana law, Montana courts have general personal jurisdiction over BNSF.[3]

## CONCLUSION

¶31 Montana courts have general personal jurisdiction over BNSF under the FELA and Montana law. We therefore affirm Judge Moses' order denying BNSF's motion to dismiss Tyrrell's complaint, and we reverse Judge Baugh's order granting BNSF's

---

[3] Because we resolve the consolidated appeals on this issue, we need not address the plaintiffs' contention that BNSF consented to personal jurisdiction.

motion to dismiss Nelson's complaint. We remand both cases for further proceedings consistent with this Opinion.

/S/ JAMES JEREMIAH SHEA

We Concur:

/S/ MIKE McGRATH
/S/ PATRICIA COTTER
/S/ BETH BAKER
/S/ MICHAEL E WHEAT
/S/ JIM RICE

Justice Laurie McKinnon, dissenting.

¶32 I respectfully dissent from the Court's opinion. I would conclude that the District Courts lack general (all-purpose) personal jurisdiction over BNSF in the consolidated appeals under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. The United States Supreme Court has made clear twice within the last five years that a state court may assert general jurisdiction over a foreign corporation under the Due Process Clause of the Fourteenth Amendment "only when the corporation's affiliations with the State in which suit is brought are so constant and pervasive 'as to render it essentially at home in the forum State.'" *Daimler AG v. Bauman*, __U.S.__, 134 S. Ct. 746, 751 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919, 131 S. Ct. 2846, 2851 (2011)) (brackets omitted). The United States Supreme Court has made it equally clear that merely "engag[ing] in a substantial, continuous, and systematic course of business" with the forum State is insufficient

19

standing alone to subject a defendant to general jurisdiction. *Daimler*, 134 S. Ct. at 761. Such a formulation, the Supreme Court has explained, would be "unacceptably grasping." *Daimler*, 134 S. Ct. at 761.

¶33 Disregarding the United States Supreme Court's express holdings in *Goodyear* and in *Daimler*, this Court entirely rejects the "at home" standard in favor of substantially the same formulation that the Supreme Court rejected. Despite the United States Supreme Court's conclusion that permitting general jurisdiction wherever a nonresident defendant is engaging in a substantial, continuous, and systematic course of business would deprive the defendant due process of law, this Court holds that BNSF can be hailed into Montana state courts under the "doing business" standard. The reasons that this Court gives for disregarding the Supreme Court's "at home" formulation and adopting the "doing business" standard are, in my view, unpersuasive. This case is quite clearly controlled by the United States Supreme Court's holdings in *Goodyear* and *Daimler* and the "at home" standard set forth therein.

I.

¶34 The Court does not contend, nor could it seriously contend, that the plaintiffs are able to satisfy the "at home" standard enunciated by the United States Supreme Court in *Goodyear* and in *Daimler*. In *Goodyear*, decided in 2011, the Supreme Court held that under the Due Process Clause a "court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear*, 564 U.S. at 919, 131 S. Ct. at 2851.

20

In the wake of *Goodyear*, many legal commentators—who had come to believe that general jurisdiction could be exercised wherever a corporation engaged in continuous and systematic business—openly questioned whether the Supreme Court actually intended to impose such a stringent standard for general jurisdiction under the Due Process Clause. *See*, *e.g.*, Todd David Peterson, *The Timing of Minimum Contacts After Goodyear and McIntyre*, 80 Geo.Wash. L. Rev. 202, 214-15, 217 (2011) (contending that the Court's restriction of general jurisdiction to corporations that are "essentially at home" should be dismissed as "loose language").

¶35    In *Daimler*, decided three years later, the Court reaffirmed its holding in *Goodyear* and expanded upon its earlier analysis.  In *Daimler*, the plaintiffs brought suit in California federal court against the German corporation Daimler, the manufacturer of Mercedes-Benz automobiles, seeking damages under federal statutory law on the theory that Daimler unlawfully aided the commission of horrific human rights violations against them in Argentina.  The plaintiffs maintained that the federal court could exercise general jurisdiction over Daimler because of the "substantial, continuous, and systematic" contacts in California of Daimler's wholly owned subsidiary, Mercedes-Benz USA, who operates "multiple California-based facilities" and is "the largest supplier of luxury vehicles to the California market." *Daimler*, 134 S. Ct. at 752.

¶36    The Court assumed, for purposes of its personal jurisdiction analysis, that Mercedes-Benz USA's contacts were fully imputable to Daimler.  Still, even with the contacts of Mercedes-Benz fully attributable to Daimler, the Court rejected the contention that Daimler was subject to general jurisdiction in California.  The Court held that the

21

standard of "substantial, continuous, and systematic course of business" was "unacceptably grasping" and "exorbitant," explaining that the Due Process Clause imposes a more stringent standard for state courts attempting to exercise general jurisdiction. *Daimler*, 134 S. Ct. at 761. The Court explained that the proper inquiry for purposes of general jurisdiction "is *not* whether a foreign corporation's in-forum contacts can be said to be in some sense 'continuous and systematic,'" but rather "whether that corporation's affiliations with the State are *so* 'continuous and systematic' as to *render it essentially at home* in the forum State." *Daimler*, 134 S. Ct. at 752 (quoting *Goodyear*, 564 U.S. at 919, 131 S. Ct. at 2851) (brackets and internal quotation marks omitted) (emphasis added). A corporation is "essentially at home," the Court instructed, where it is incorporated or where it has its principal place of business. *Daimler*, 134 S. Ct. at 760. The Court explained that only in an "exceptional case" will a corporation be deemed essentially at home in another State. *Daimler*, 134 S. Ct. at 761 n.19.

¶37    Here, there is no dispute that BNSF's affiliations with Montana are not so substantial as to render it essentially "at home" in this State. BNSF is not incorporated under the laws of Montana, nor does it have its principal place of business in Montana. These two facts alone are strong evidence that BNSF is not at home in Montana. "With respect to a corporation, the place of incorporation and principal place of business are 'paradigm bases for general jurisdiction.'" *Daimler*, 134 S. Ct. at 760 (brackets, ellipsis, and citation omitted). "Those affiliations have the virtue of being unique—that is, each ordinarily indicates only one place—as well as easily ascertainable." *Daimler*, 134 S. Ct. at 760. It is only in an "exceptional case" that a State will have general jurisdiction over

a corporation outside of its place of incorporation and principal place of business. *Daimler*, 134 S. Ct. at 761 n.19.

¶38 There is nothing exceptional about BNSF's contacts with Montana that would permit general jurisdiction. While BNSF certainly conducts substantial business in Montana, "the general jurisdiction inquiry does not 'focus solely on the magnitude of the defendant's in-state contacts.'" *Daimler*, 134 S. Ct. at 762 n.20 (brackets and citation omitted). Indeed, in *Daimler*, the Court refused to find personal jurisdiction despite the fact that Mercedes-Benz USA distributes tens of thousands of cars to California, generates billions of dollars in revenue from California, and has multiple facilities in the State, including a regional headquarters. *Daimler*, 134 S. Ct. at 752.[1] "General jurisdiction instead calls for an appraisal of a corporation's activities in their entirety, nationwide and worldwide." *Daimler*, 134 S. Ct. at 762 n.20. "A corporation that operates in many places can scarcely be deemed at home in all of them." *Daimler*, 134 S. Ct. at 762 n.20.

¶39 Applying the United States Supreme Court's directive and comparing BNSF's activities in Montana with its nationwide activities, it is clear that BNSF is not at home in Montana. BNSF receives less than 10% of its revenue from Montana; barely 6% of BNSF's total track mileage is located in Montana; and less than 5% of BNSF's total workforce is located in Montana. These percentages, though slightly greater, differ little from those the Court found to be insufficient in *Daimler*. *See Daimler*, 134 S. Ct. at 752 (noting Mercedes Benz USA's sales make up 2.4% of Daimler's worldwide sales).

---

[1] *See also Daimler*, 134 S. Ct. at 763 (Sotomayor, J., concurring).

¶40    In *Daimler*, the Court cited *Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437, 72 S. Ct. 413, as the "textbook" example of an "exceptional case" where general jurisdiction may exist outside the corporation's place of incorporation and principal place of business. In *Perkins*, the defendant company's primary place of business was, because of wartime circumstances, temporarily located in Ohio, where the company was sued. *Perkins*, 342 U.S. 437, 447-48, 72 S. Ct. at 419-20. The Court deemed the place of service in those unusual circumstances "a surrogate for the place of incorporation or head office." *Daimler*, 134 S. Ct. at 756 n.8 (citations omitted). On that basis alone, the Court concluded that Ohio courts could exercise general jurisdiction over the company without offending due process. *Daimler*, 134 S. Ct. at 756. In contrast, BNSF's contacts with Montana are far from establishing a surrogate principal place of business in this State.

¶41    In short, BNSF's contacts with Montana are insufficient to satisfy the due process standard set forth by *Goodyear* and *Daimler* to permit BNSF to be hailed into courts of this State. That much is not in dispute. And, in my view, that is where the analysis of this case should come to end.

II.

¶42    Acknowledging that BNSF is not "at home" in Montana, the Court persists that BNSF can be brought before tribunals of this State under a less stringent standard, holding that BNSF need only be "doing business" in Montana for state district courts to sustain general jurisdiction. Opinion, ¶ 12. The Court reasons that the Due Process Clause demands less in this case than in *Goodyear* and in *Daimler* because, unlike in those cases, this case involves a "FELA claim [and] a railroad defendant." Opinion, ¶ 16.

24

¶43     I must disagree with the Court's refusal to apply the teachings of *Goodyear* and *Daimler*.  Flowing from the Due Process Clause, the requirement that a state court have personal jurisdiction is "first of all an individual right" under the Fourteenth Amendment.  *Insurance Corp. of Ireland v. Compagnie Des Bauxites De Guinee*, 456 U.S. 694, 702, 102 S. Ct. 2099, 2105 (1982).  "It represents a restriction on judicial power not as a matter of sovereignty, but as a matter of individual liberty."  *Insurance Corp. of Ireland*, 456 U.S. at 702, 102 S. Ct. at 2104.  That is to say, personal jurisdiction imposes a limitation on a state court's power to "protect the liberty of the nonresident defendant."  *Walden v. Fiore*, __U.S.__, 134 S. Ct. 1115, 1122 (2014).

¶44     I perceive no sound basis to afford BNSF less constitutional protection than the defendants were afforded in *Goodyear* and in *Daimler*.  The United States Supreme Court has consistently explained that the inquiry under personal jurisdiction does not focus on the unilateral actions of the plaintiff, but instead focuses on the defendant's relationship with the forum State.  *Walden*, 134 S. Ct. at 1122 (citing *Helicopteros Nacionales de Colombia, S. A. v. Hall*, 466 U.S. 408, 417, 104 S. Ct. 1868, 1873 (1984)).  Indeed, there is no authority for the proposition that the quality or quantity of process afforded a defendant by the requirement of general jurisdiction depends on the type of cause of action pursued by the plaintiff or the occupation of the defendant.  A defendant does not forfeit liberty or have a diminished liberty interest merely because the plaintiff brings a FELA action.  Nor does a defendant forfeit constitutional protection by operating a railroad.  It is thus altogether immaterial under the general jurisdiction inquiry that the plaintiffs here brought a FELA claim rather than a Torture Victim Protection claim

(*Daimler*) or a negligence claim (*Goodyear*). It is likewise wholly immaterial that BNSF operates a railroad as opposed to a car dealership (*Daimler*) or a tire manufacturing operation (*Goodyear*). The Due Process Clause requires a defendant to be "at home" to be subject to general jurisdiction in the forum State, *Daimler*, 134 S. Ct. at 754, and the Supreme Court has defined "at home" for a corporation as "the place of incorporation" and the "principal place of business" of the corporation. *Daimler*, 134 S. Ct. at 760. In so doing, the Court has established the minimum, base-line guarantee of due process that must be afforded defendants by the Constitution of the United States. BNSF should not be hailed into a state court in Montana under any less stringent of a standard. Simply put, there is not a different, less protective Due Process Clause for BNSF; it is entitled to the same due process of law as every other defendant.

¶45 The Court persists that a "century" of United States Supreme Court precedent dictates otherwise, Opinion, ¶ 22, reasoning that "decades of consistent" Supreme Court decisions show that a nonresident railroad is subject to general jurisdiction wherever the railroad is "doing business." Opinion, ¶ 17. Remarkably, the Court arrives at this conclusion *without citing a single* general jurisdiction case. The Court instead cites three United States Supreme Court decisions—*Pope*, *Miles*, and *Terte*—having nothing to do with general jurisdiction under the Due Process Clause. In *Pope* and in *Miles*, the Supreme Court addressed whether FELA prevented state courts from using their equitable powers to enjoin their residents from bringing vexatious suits in other state courts. *Pope*, 345 U.S. at 380, 73 S. Ct. at 750; *Miles*, 315 U.S. at 699, 62 S. Ct. at 828. In *Terte*, the Court addressed whether interstate commerce is unduly burdened by

26

bringing an action under FELA in respect to an injury sustained in another State. *Terte*, 284 U.S. at 287, 52 S. Ct. at 153. These cases do not so much as mention the Due Process Clause or general jurisdiction. Nor have the cases ever been cited by the United States Supreme Court or any other court—until now—for any proposition remotely related to general jurisdiction. This claimed "century" of United States Supreme Court precedent permitting general jurisdiction wherever a nonresident railroad is doing business simply does not exist.

¶46 Further, even if the cases cited by the Court actually stood for the propositions cited for, it would not matter. Notwithstanding the Court's statement that these cases show "decades of consistent" precedent, none of the cited cases were decided within the last six decades. In *Daimler*, the plaintiffs emphasized earlier Supreme Court decisions that seemingly upheld general jurisdiction under a formulation less stringent than the "at home" standard. The Supreme Court, however, refused to follow these decisions, explaining that they were decided in a different "era" before modern general jurisdiction developed. *Daimler*, 134 S. Ct. at 761 n.18. After dismissing the decisions in a footnote, the Court made clear once again that the proper inquiry under the Due Process Clause is whether a nonresident corporation's contacts are so constant and pervasive as to render it "essentially at home in the forum State." *Daimler*, 134 S. Ct. at 761. Thus, whatever standard earlier decisions may or may not have used, the Supreme Court has now made clear that the Due Process Clause of the Fourteenth Amendment requires a defendant to be "at home" in the forum State to be subject to general jurisdiction.

¶47 Lastly, the Court contends that Congress, *not* the Constitution, controls the sufficiency of process that is required to hail BNSF into state courts in Montana. Pushing aside the constitutional restrictions imposed by the Due Process Clause of the Fourteenth Amendment to the United States Constitution, the Court maintains that Congress has conferred general jurisdiction under 45 U.S.C. § 56 of FELA, to state courts and has chosen to provide BNSF with less protection than the United States Supreme Court has held is required by the Due Process Clause.

¶48 I again must disagree with the Court. Congress did not, nor could it, do so. First, Congress did not confer personal jurisdiction with the passage of 45 U.S.C. § 56. Section 56 is a venue statute for the federal courts, not a grant of personal jurisdiction to state courts. The United States Supreme Court has made this point clear: 45 U.S.C. § "[5]6 establishes *venue* for an action in the *federal* courts." *Balt. & O. R. Co. v. Kepner*, 314 U.S. 44, 52, 62 S. Ct. 6, 9 (1941) (emphasis added). Indeed, the "phrasing of the section is not unique: it follows the familiar pattern generally employed by Congress in framing venue provisions." *Kepner*, 314 U.S. at 56, 62 S. Ct. at 11 (Frankfurter, J., dissenting) (citing several federal venue statutes). Notably, even the cases the Court cites—for the erroneous proposition that a "century" of Supreme Court precedent dictates general jurisdiction exists wherever a railroad is doing business—expressly state that § 56 confers venue in the federal courts. *Miles*, 315 U.S. at 710, 62 S. Ct. at 833 ("the provision of § [5]6 'filled the entire field of *venue* in *federal* courts'"); *Pope*, 345 U.S. at 383, 73 S. Ct. at 752 (§ 56 provides an "employee a right to establish *venue* in the *federal* court")

(emphasis added). Personal jurisdiction does not result from 45 U.S.C. § 56, and in the century since its enactment, no court has ever concluded that it does.

¶49     Second, assuming for the sake of argument that § 56 does confer personal jurisdiction, it surely does not confer it to state courts. 45 U.S.C. § 56 provides that "an action may be brought in a circuit [district] court *of the United States*, in the district of the residence of the defendant, or in which the cause of action arose, or in which the defendant shall be doing business at the time of commencing such action." (Emphasis added). By its plain language, § 56 applies only to "court[s] of the United States." Seizing on the statute's subsequent language that allows for "concurrent jurisdiction" with the several States, the Court persists that this language grants state courts personal jurisdiction. The phrase "concurrent jurisdiction" is a well-known term of art long employed by Congress and courts to refer to subject-matter jurisdiction, not personal jurisdiction. *See* 21 U.S.C. § 467e; 48 U.S.C. § 1704; 21 U.S.C. § 678; 15 U.S.C. § 1829; 29 U.S.C. § 1132(e)(1); *Claflin v. Houseman*, 93 U.S. 130, 134 (1876); *Mims v. Arrow Fin. Servs.*, LLC, __U.S.__, 132 S. Ct. 740, 745 (2012).[2, 3] Furthermore, the United States Supreme Court has repeatedly interpreted the concurrent jurisdiction language within 45 U.S.C. § 56 to denote the conveyance of subject-matter jurisdiction. *See, e.g., Chesapeake & Ohio R. Co. v. Stapleton*, 279 U.S. 587, 49 S. Ct. 442 (1929);

---

[2] In fact, the term dates back even before the passage of the United States Constitution to mean jurisdiction over the cause of action. *See* The Federalist No. 82, p 132 (E. Bourne ed. 1947, Book II) (A. Hamilton).

[3] In conducting research, I could not find a single court that has ever construed concurrent jurisdiction to mean anything other than jurisdiction over the subject matter.

*Norfolk S. Ry. v. Sorrell*, 549 U.S. 158, 127 S. Ct. 799 (2007). The congressional grant of concurrent jurisdiction with the several States clearly refers to a grant of subject-matter jurisdiction over FELA actions, not a grant of personal jurisdiction over individual defendants.

¶50 Lastly, Congress lacks authority to confer personal jurisdiction to state courts where the Due Process Clause of the Fourteenth Amendment would prohibit it. The Due Process Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." The United States Supreme Court has made clear that the Constitution "grants Congress no power to restrict, abrogate, or dilute these guarantees." *Miss. Univ. for Women v. Hogan*, 458 U.S. 718, 732, 102 S. Ct. 3331, 3340 (1982). Indeed, it is well established that "neither Congress nor a State can validate a law that denies the rights guaranteed by the Fourteenth Amendment." *Hogan*, 458 U.S. at 732, 102 S. Ct. at 3340 (citing *Califano v. Goldfarb*, 430 U.S. 199, 210, 97 S. Ct. 1021, 1028 (1977); *Williams v. Rhodes*, 393 U.S. 23, 29, 89 S. Ct. 5, 10 (1968)).

¶51 As explained above, the requirement that a state court have personal jurisdiction flows from the Due Process Clause of the Fourteenth Amendment and protects the individual "liberty of the nonresident defendant." *Walden*, 134 S. Ct. at 1122. The United States Supreme Court has held that consistent with the guarantee of individual liberty that Clause prohibits a nonresident defendant from being hailed into a state court for all purposes unless the defendant's "affiliations with the State in which suit is brought are so constant and pervasive 'as to render it essentially at home in the forum State.'"

30

*Daimler*, 134 S. Ct. at 751 (quoting *Goodyear*, 564 U.S. at 919, 131 S. Ct. at 2851) (brackets omitted). Congress cannot by way of 45 U.S.C. § 56, or any federal law, "restrict, abrogate, or dilute" that constitutional guarantee. *Hogan*, 458 U.S. at 732, 102 S. Ct. at 3340.

III.

¶52 In sum, the Due Process Clause of the Fourteenth Amendment to the United States Constitution provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." That Clause prohibits a state court from exercising general jurisdiction over a nonresident defendant unless the defendant's contacts with the State are so pervasive as to render the defendant essentially "at home" in the State. *Daimler*, 134 S. Ct. at 751. Because there is no dispute that BNSF's contacts are not so pervasive as to render it essentially at home in Montana, I would conclude that the two Montana State District Courts in the consolidated appeals lack general jurisdiction over BNSF under the Due Process Clause of the Fourteenth Amendment.

¶53 The Court does not address whether BNSF consented to jurisdiction in Montana, and I will reserve judgment on that issue as well. For unless the United States Supreme Court meant something other than what it said, I will get an opportunity to ultimately provide my thoughts on that argument in the future.

¶54 I respectfully dissent.

/S/ LAURIE McKINNON